# HENRY LaFARRIER v. JOHN HARDY ET ALS.

JANUARY TERM, 1894.

*Highways. Failure to notify landowner. Trespass quare clausum.*

1. In the laying or alteration of highways selectmen may act of their own motion and without petition.

2. Their failure to give notice of a time and place for hearing upon the question of damages, or to specify a time for the removal of fences, timber, etc., do not render the proceedings of selectmen in the laying of a highway void.

3. But such proceedings are void unless the landowner has due notice of a hearing, or is actually heard upon the question of whether the public convenience or necessity demands the highway, for the determination of that question is preliminary to the jurisdiction of the selectmen in the matter.

4. Where the selectmen, upon a petition to resurvey and establish the boundaries of a highway already laid out, intended and attempted to locate the second line upon the first, but in fact placed it six feet farther out, and the landowner had no notice of their proceedings, *Held*, that he might maintain trespass *quare clausum* against the selectmen for moving his fence from the old line onto the new.

Trespass *quare clausum*. Plea, the general issue. Trial by jury at the September term, 1892, Chittenden county, ROWELL, J., presiding. The jury returned a special verdict upon which the court gave judgment for the defendants. The plaintiff excepts.

*H. F. Wolcott* and *W. L. Burnap* for the plaintiff.

The defendants must show affirmatively that the statutes relative to the taking of land for highways had been complied with.    *Kidder* v. *Jennison,* 21 Vt. 108; R. L., s. 2927.

*H. N. Deavitt* and *Seneca Haselton* for the defendants.

The selectmen had authority to re-survey this street.   R. L., s. 2920; *Trudeau* v. *Sheldon,* 62 Vt. 198.

It will be presumed that a proper petition was made to the selectmen.   *Kidder* v. *Jennison,* 21 Vt. 108.

If damages had not been awarded the plaintiff he had his remedy, but that would not render the proceedings void. R. L., ss. 2932, 2933; *Tunbridge* v. *Tarbell,* 19 Vt. 453; *Emerson* v. *Reading,* 14 Vt. 279.

TYLER, J.   The controversy was in relation to a strip of land six feet wide, situated on the east side of West street, in the village of Winooski, in Colchester, and claimed by the plaintiff as a part of his house lot.   The defendants had removed the plaintiff's fence, claiming that the strip of land was within the limits of the survey of the street.   The plaintiff insisted that it was east of the survey.

By Act No. 178, Laws of 1886, incorporating the village of Winooski, substantially the same powers were conferred upon the trustees in respect to the highways of the village as selectmen possess as to highways in their respective towns.

It appeared that a survey of several of the streets of the village, including West street, was made in the year 1867 and was known as the McGregor survey.   In 1871 West street was established by the selectmen according to this survey and a record thereof was made in the town clerk's office. A map of that and other streets included in the survey was also filed and recorded, and this street was then opened for travel and has been kept open ever since.

It further appeared that in the year 1884 a large number

of freeholders petitioned the selectmen to re-locate and set stone monuments at the corners of several streets, including West from River street to its northern terminus, representing that those streets were without known boundaries and that it was inconvenient for residents to erect fences and buildings upon them. Acting upon this petition the selectmen, in 1885, caused a survey and map of certain streets, including West, to be made by one Nash, placed monuments at the corners and angles of the streets, filed the survey and map in the town clerk's office and caused them to be recorded. They laid out and established the streets included in the survey, ordered them to be wrought for public travel and made a report of their doings to the town clerk's office.

No question was made but that this land was within the Nash survey, but the defendants claimed that the east line of the McGregor survey was identical with the east line of the Nash survey, and therefore that this land was a portion of the street, as established by both surveys. Under instructions from the court, the jury did not return a general verdict, but returned a special one that, at the time the fence was removed it stood on the east line of West street, as established by the McGregor survey. The plaintiff was entitled to a judgment on the verdict to recover the amount of damages found by the jury, unless the selectmen, in their resurvey of 1885, had authority to widen and in fact widened the street by including this land.

The selectmen, in the report of their doings upon this petition to the town clerk's office, refer to certain other petitions on file in that office, but they do not state what those petitions contain. So far as the case shows they widened West street by taking this land upon their own motion, without petition. They were petitioned only to establish the boundaries of the street as originally surveyed. Section 2914, R. L., confers upon selectmen authority to lay out, alter and

discontinue highways, as the convenience of the inhabitants and the public good require, and they may act without petition. This was so held in *Brock* v. *Barnet*, 57 Vt. 172. Therefore it is unnecessary to presume that the selectmen had a petition to widen the street. It was said by Redfield, C. J., in *Kidder* v. *Jennison*, 21 Vt. 108, that this might be presumed because all reasonable presumptions are made in favor of judicial and other analogous proceedings. It is clear that they might act without a petition.

The exceptions state that there was no evidence whether the selectmen did or did not appoint a hearing, give notice and consider claims for damages. As they did not intend to widen the street by taking the plaintiff's land it is not presumable that they gave notice to him. But the act of selectmen in laying out or altering a highway is not void by reason of their omission to give notice to land owners that they may be heard upon the question of damages. This was held in the case above cited when the law required, as it now does, that the selectmen should give notice to all parties interested of a time and place of hearing upon the petition and to all persons owning or interested in lands of a time and place of hearing upon the subject of damages. R. S., ch. 20, s. 10; R. L., ss. 2921, 2922. In that case the court said that the statute was intended as a direction to the selectmen in their duty, and perhaps to impose an obligation upon them which, if they did not perform when they might, should form the ground of an action in favor of any one aggrieved, but nothing more. When selectmen have taken the other steps pointed out by the statute and laid a highway open to public travel, their omission to give notice to land owners of a hearing upon the question of damages does not render their proceeding a nullity. In such case the land owner is not without remedy. He may have commissioners appointed to appraise his damages under R. L., s. 2932, *et seq.*, or under section 2940 have commissioners

appointed to revise the entire proceedings of the selectmen. The omission of selectmen laying a highway to specify a time for the land owner to remove his fences, timber, etc., so that the road may be wrought, will not render their act invalid. This was held in the same case under R. S., ch. 20, s. 24, which is identical with R. L., s. 2926.

The selectmen were petitioned to re-survey the street under section 2920, R. L. They intended to re-survey it and re-establish the McGregor survey, and made report that they had acted " agreeably with the foregoing petition." Being under a mistake as to where the east line of that survey was, and supposing it was six feet further east than it was in fact, they located the east line of the street six feet east of the former survey, taking the land in question. These were uncontroverted facts. Do they, with the record of the action of the selectmen, the map on file and the monuments erected, amount to an appropriation of the plaintiff's land to public use? The fact that they intended to resurvey the street and establish its original boundaries could not affect what they in fact did. The record of what was done must control, and not their intention, as subsequently expressed.

The defendants insisted at the trial in the court below, as one ground of defence, that the last survey was identical with the first, though they claimed that the Nash survey established the east line of the street, whether it was the same as the former survey or not.

The statute, R. L., s. 2922, in direct terms, requires that the selectmen, when duly petitioned to lay out or alter a highway, shall appoint a time for examining the premises and hearing the parties interested; that they shall give notice to one or more of the petitioners; and shall also give notice to persons owning or interested in lands through which the highway may pass of such time, and also of the time when they will consider claims for damages. The

next section provides that if, after examining the premises
and hearing the parties, they judge that the public good or
the necessity or convenience of individuals requires such
highway to be laid out or altered, as claimed in the petition,
they shall cause the same to be surveyed.   There is no oc-
casion to give notice that they will consider claims for dam-
ages unless they decide to lay the road and cause it to be
surveyed.

This court has not held that the action of selectmen in
laying a highway would be valid without notice to land
owners so that they might be heard upon the primary ques-
tion whether the public good or the necessity or convenience
of individuals required the taking of their lands.   At first
view *Kidder* v. *Jennison* seems to hold this.   It was an
action of case for alleged injury by the defendants to the
plaintiff's reversionary interest in certain lands.   The de-
fendants offered in evidence a copy of the record of a survey
bill of the road in question, made by them as selectmen, etc.
The plaintiff objected to this evidence for the reason, among
others, that it did not appear that any notice was given to
the plaintiff of the doings of the selectmen so that he could
appear and claim his damages for laying the road through
his land.   The point was not made that he had not had
notice to appear and be heard upon the question of laying
the road, and that question was not passed upon.

The first question to be decided by the selectmen is
whether the public good or the necessity or convenience of
individuals requires the laying of the road, and they are to
decide it upon an examination of the premises and a hearing
of the persons interested—the petitioners and others inter-
ested to have the road laid, and the land owners who may
have an interest to keep their lands intact.   The laying of
highways often requires the removal of buildings and the
taking or inconveniently dividing valuable lands, and land
owners have a right to appear before the selectmen with

witnesses and counsel and contest the petition, and show, if they can, that there is not such a public or private occasion for the road as will warrant the injury to their property. It is not enough that the law makes ample provision for them to secure their damages after the road has been laid. They have a right to appear and oppose the condemnation of their lands to public use.

In *Haynes* v. *Lassell*, 29 Vt. 159, the question was whether a highway could be discontinued without notice to land owners. Redfield, C. J., in discussing the question, said:

"The condemnation of land for the use of a highway is in the nature of a judgment *inter partes*, to the validity of which, notice, actual or presumptive, is indispensable."

Every species of property which the public needs may require, and which government cannot lawfully appropriate under any other right, is subject to be seized and appropriated under the right of eminent domain. Land for the public ways, timber, stone and gravel with which to make or improve the public ways, buildings standing in the way of contemplated public improvements are liable to be thus appropriated. The right to appropriate private property to public use lies dormant in the state until legislative action is had, pointing out the occasions, modes, conditions and agencies for its appropriation. Cooley Cons. Lim., s. 527, 528. All that the legislature does is to oblige the owner to alienate his possessions for a reasonable price, and even this is an extension of power which the legislature indulges with caution. 1 Black. Com., 139. Every requisite of the statute conferring the power to exercise the right must be carefully observed and the rules strictly followed, otherwise the property is not effectually taken and the proceedings are void. Angell on Highways, 75, n. In *Adams* v. *Clarksburg*, 23 W. Va. 203, the court said:

"The taking of private property for public use, without

the owner's consent, can only be justified for the uses, in the modes, upon the conditions and by the agencies prescribed by law for its appropriation. Whenever the private property of an individual is to be so divested by proceedings against his will, a strict compliance must be had with all the provisions of law which are made for his protection and benefit, or the proceeding will be ineffectual. Those conditions must be regarded as conditions precedent, which are not only to be observed and complied with before the right of the property owner is disturbed, but the party claiming authority under the adverse proceedings must show affirmatively such compliance. All the authorities concur in holding that as private property can be taken for public uses against the consent of the owner only in such cases and by such proceedings as may be specially prescribed by law, and as these proceedings are contrary to the course of the common law, and in derogation of common right, they are to be strictly construed, and the party who would avail himself of this extraordinary power must fully comply with all the provisions of the law entitling him to exercise it."

It is not in accordance with the spirit of our constitution and laws that citizens should have no opportunity to be heard before judgment is rendered against them or their property. We hold that notice to the plaintiff was necessary to give the selectmen jurisdiction of the subject matter of laying the street. No notice was shown to have been given and none can be presumed in the circumstances of the case ; therefore the taking of the land was without authority and the defendants were trespassers.

*Judgment reversed and judgment on the verdict.*