GEORGE W. WILDER'S EXR. *v.* GEORGE H. WILDER AND THOMAS J. DEAVITT.

October Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed March 3, 1909.

*Equity—"Limitations"—"Laches"—Distinction — Raising Defence—Demurrer—Appeal—Scope of Review—Reserved Questions—Waiver of Error—Subrogation—Satisfied Mortgage—Right of Surety Paying Debt—Witnesses—Competency—Transaction with Party Since Dead—"Other Party" —Husband and Wife—Husband as Surety.*

The terms "limitations" and "laches," when applied to the period within which an equitable right may be asserted, are not synonymous. "Limitations" signify that fixed period named in the statute, whether the statute is expressly applicable to suits in chancery or is followed therein by analogy; while "laches" denotes unreasonable delay independent of statute or any fixed period. "Laches"

also involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works disadvantage to another. The defence of laches is neither a limitation nor an estoppel, but partakes of the characteristics of both.

Although the Statute of Limitations may be availed of by demurrer, where the objection appears on the face of the bill, the defence of laches cannot be so interposed, but the facts constituting it must be specially pleaded.

Where an exception to a paragraph of the answer was allowed on the ground that the matters alleged were not pertinent to the case, and the question was not in terms reserved but defendants amended their answer by striking out the paragraph in compliance with the chancellor's order, the question was not reserved by implication so as to be available on appeal.

Where an exception to a paragraph of an answer was sustained, and subsequently a decree was rendered in accordance with an agreement of the parties, and no claim was made that the paragraph in question should be considered or covered by the decree, and it was not in fact passed on, any error in sustaining the exception thereto was waived.

A husband was surety for his wife's debt secured by a mortgage on her property, and after her death leaving him and defendant, their son, as her sole distributees, the husband paid the mortgage and continued to use the property as his own till he died, leaving the oratrix his second wife, as his widow, to whom he devised the property. *Held*, that, as against defendant's claim as heir, the oratrix was entitled, as the executrix of her husband's will, to be subrogated to the rights of the mortgagee.

In a suit to enforce that subrogation the oratrix was not disqualified to testify as being the "other party" to any contract or cause of action in issue, within P. S. 1589, though she might benefit by a successful termination of the litigation by virtue of her husband's will.

Error, if any, in receiving testimony as to facts admitted by the answer was harmless.

Certain real estate having been conveyed to the decedent's wife, she and he on the same day mortgaged the premises to the grantor to secure their joint note for the purchase money, payable to bearer on demand. Decedent and his wife went into immediate possession of the property and occupied it as their home till the wife's death, after which, at the request of the executor of the grantor's estate,

decedent indorsed on the note an agreement to waive the Statute of Limitations and promising to pay it. *Held*, that decedent was surety for his wife, and not the principal debtor.

APPEAL IN CHANCERY. Heard on the pleadings, master's report and exceptions thereto, at the September term, 1906, Washington County, POWERS, Chancellor. Decree, *pro forma*, overruling the exceptions and subrogating the oratrix to the rights of the mortgagee. The defendants appealed. This case has been once before in the Supreme Court; see 75 Vt. 178.

The master's report shows that the oratrix was the second wife of George W. Wilder, deceased, was married to him May 8, 1884, and is the executrix of his will. His first wife was Maria A. Wilder, who died February 8, 1878. The defendant, George H. Wilder is the son of George W. Wilder by his first wife, and is his sole heir. The other defendant is the trustee under said will of one-half the residuary estate.

On March 24, 1864, one William B. Hubbard conveyed to his daughter, the said Maria A. Wilder, the premises in question in this case. No money passed in the transaction, but on the same day Maria A. Wilder and her husband, George W. Wilder mortgaged the premises to Hubbard to secure the payment of a note of $2,000, signed by them and payable on demand to Hubbard, or bearer. The master finds that George W. signed this note as surety. Maria A. and George W. immediately went into possession of said premises and occupied them as their home until the death of Maria A. Since the marriage of the oratrix and George W. Wilder, they occupied said premises as their home till his death, April 16, 1901. The mortgage debt had not been paid when Maria A. Wilder died, and thereafter, on March 20, 1879, George W. Wilder was required by the executor of William B. Hubbard's estate to indorse on the note an agreement signed by him waiving the Statute of Limitations and promising to pay the note.

Subsequently, and before his marriage to the oratrix, George W. Wilder paid the mortgage debt, with his own funds, and the mortgage was then discharged. Thereafter George W. Wilder believed that, because of that payment, he became the absolute owner of the real estate in question, and no one ever made any claim to the contrary, till this controversy arose.

For more than twenty years prior to his death, which occurred April 16, 1901, said real estate was set in the grand list to George W. Wilder, and during all that time he paid the taxes thereon and, during all the time from said conveyance thereof to Maria A. Wilder till his death, he occupied the premises as his home. Since the death of George W. the defendant, George H. Wilder, has neither paid nor offered to pay any of the taxes, insurance, water rents, or other charges on the real estate, but the same have been paid by the executrix out of the estate of the said George W. and, without objection from any one, said real estate has been set in the list to said estate.

On March 11, 1891, George W. Wilder made his will, which, after making a few bequests not material here, disposed of the residue as follows: "To my wife, Caroline F. H. Wilder, one-half of all the residue and remainder of my estate, including the homestead and place where I now live as a part of her share." The "homestead" refers to the premises in question. The other half of the residue was devised to a trustee to be appointed by the probate court for the benefit of defendant George H. Wilder; and the other defendant is that trustee.

The oratrix always believed, till about February, 1902, when she learned the contrary, that the legal title to the premises in question was in George W. Wilder and after his death belonged to his estate. About February, 1902, she requested George H. Wilder to convey to her as such executrix, the premises in question which he refused to do.

The bill prays for a decree either ordering defendant, George H. Wilder to deed said premises to the oratrix or directing that she be subrogated to the rights of the mortgagee under the mortgage, and for general relief.

*Plumley & Plumley* and *Hogan & Hogan* for the oratrix.

The defendants' opportunity to avail themselves of the Statute of Limitations passed when the demurrer was disposed of in the Supreme Court. *Sherman & Adams* v. *The Windsor Mfg. Co.,* 57 Vt. 57; Story's Eq. Pl., (Redf. Ed.) §503 and note 4 and §751; *National Bank* v. *Carpenter,* 101 U. S. 567; *Speidel* v. *Henrici,* 120 U. S. 377; 6 Enc. Pl. & Pr. 403 and cases cited in note 4.

Again, said George W., could not have foreclosed the interest of George H. in the premises at any time during his life; nor could George H. during said time have successfully maintained a bill for redemption after said George W. had exercised his prior right to redeem the said premises. *Raffety* v. *King,* 15 Eng. Ch. Rep. 603; 2 Jones Mort., Sec. 1065; 11 Am. and Eng. Enc. of Law, 225; *Ravald* v. *Russel,* 1 Young's Rep. 9, 21-2; *Prout* v. *Cock,* 2 Chancery Div. (Law Rep. 1896) 808, 809, 810.

*T. J. Deavitt* and *Edward H. Deavitt* for the defendants.

The defendants claim to be entitled to the benefit of paragraph 28 of their answer that the cause of action, if there be any, did not accrue within 15 years. and 30 days of the death of George W. Wilder and therefore say that the 4th exception of the oratrix to the defendants' answer should be overruled. *Drake* v. *Wild,* 65 Vt. 611; *Gleason* v. *Carpenter,* 74 Vt. 399; *Scoville* v. *Brock,* 76 Vt. 385. The mortgage in question did not contain any words excluding the husband from his marital rights in the property in question and so the property was not held by Maria A. Wilder to her sole and separate use. *Hackett* v. *Moxley,* 68 Vt. 210; *Dietrich* v. *Hutchinson,* 73 Vt. 134.

POWERS, J. When this case was here on the demurrer,— *Wilder's Exrx.* v. *Wilder, et al.,* 75 Vt. 178, 53 Atl. 1072,—it was held that on the case made by the bill the court of chancery had jurisdiction, and that the oratrix was entitled to subrogation to the Hubbard mortgage to the extent that the testator was bound to pay to protect his life estate in the mortgaged premises. The cause was remanded, the defendants filed their answer, and the oratrix her exceptions thereto. All except the fourth were sustained by the chancellor, and of these rulings, only that sustaining the fifth exception is here complained of. The chancellor held that the fourth exception was not well taken, and reserved the benefit thereof till the hearing. The answer was amended according to the rulings of the chancellor, a master was appointed, a hearing had and a report filed,—to which the defendants filed exceptions. Thereupon, without a hearing in the court of chancery, a *pro forma* decree passed sustaining said fourth exception and denying the defendants the benefit of the Statute of Limitations under paragraph 28 of the answer, over-

ruling the exceptions to the report and accepting the same, and subrogating the oratrix to the Hubbard mortgage to the amount paid thereon by the testator January 27, 1880, with interest thereon from the date of the testator's death, April 16, 1901, to July 16, 1906,—less the net rents and profits of the mortgaged premises between said last named dates,—amounting by computation to $5,443.40, and providing, among other things, for a foreclosure unless the defendants paid said sum with interest and costs on or before a time limited. From this decree, the defendants appealed.

I. In paragraph 28 of the answer to which the oratrix's fourth exception applied, it is alleged that the cause of action did not accrue within fifteen years and thirty days before the testator's death. The exception is that the bar of the Statute of Limitations, as therein set forth, is not available to the defendants, as the essential facts appear on the face of the bill, and therefore that question was raised by the demurrer; and the demurrer having been finally disposed of, the question cannot again be raised. The defendants do not deny that this result follows if the question•was raised by the demurrer.

The terms ''limitations'' and ''laches,'' when applied to the period of time within which an equitable right must be asserted, do not denote the same thing. The former signifies that fixed period specified in the statute; and this is so whether the statute is expressly applicable to suits in chancery, or is followed in such suits by analogy. The latter signifies unreasonable delay, independent of the statute or any fixed period of time. See *Drake* v. *Wild*, 65 Vt. 611, 27 Atl. 427. Laches also involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works a disadvantage to another. *Chase* v. *Chase*, (R. I.) 37 Atl. 804; *Farr* v. *Hauenstein*, (N. J.) 61 Atl. 147; *Hartford* v. *Mechanics Sav. Bank*, (Conn.) 63 Atl. 658; *Parker* v. *Bethel Hotel Co.*, (Tenn.) 34 S. W. 209, 31 L. R. A. 706; *O'Brien* v. *Wheelock*, 184 U. S. 450, 46 L. Ed. 636, 22 Sup. Ct. 354; 5 Pom. Eq. §21; *Coleman* v. *Whitney*, 62 Vt. 123, 20 Atl. 322, 9 L. R. A. 517; *Royce* v. *Carpenter*, 80 Vt. 37, 66 Atl. 888. As a defence, laches is not, on the one hand, limitations, nor on the other, is it estoppel; though it partakes of the characteristics of both. Under our practice, these two defences are not governed by the same rule of pleading. It is expressly held in *Sherman & Adams* v.

*Windsor Mfg. Co.*, 57 Vt. 57, that the Statute of Limitations may be availed of by demurrer when the objection appears on the face of the bill. While in *Gleason* v. *Carpenter*, 74 Vt. 399, 52 Atl. 966, it is just as expressly held that the defence of laches cannot be interposed by demurrer. The case of *Drake* v. *Wild, supra,* has sometimes been thought to be out of harmony with these cases. But it is not. It is therein held that the Statute of Limitations did not apply, but there is no intimation that the question was not properly raised by the demurrer; while it is expressly held that the defence of staleness cannot be so raised. "When a defendant," says the court, "relies upon lapse of time, or a presumption arising therefrom, *but not upon the absolute bar of the Statute of Limitations,* he must plead or answer the facts,"—thereby drawing the very distinction which the writer is attempting to point out. It is sometimes said that the reason for requiring the defence to be pleaded is to give the plaintiff an opportunity to amend his bill and excuse the delay. 16 Cyc. 176.

It follows that the defendants' opportunity to avail themselves of the Statute of Limitations passed when the demurrer was disposed of.

It is not claimed that we should construe the allegations of the answer as setting up the defence of laches,—and it could not well be, considering the form of the allegations and the fact that it is apparent from the decree that no such claim was made in the court of chancery.

II. The defendants insist that they are entitled to have the fifth exception passed upon. Paragraph 30 of the answer set out certain facts, apparently independent of those alleged in the bill, which it was claimed gave rise to an equity in favor of the estate of George W. Wilder to have a decree for certain real estate standing in the name of the widow, Caroline,—the oratrix in this suit; which equity, it was claimed, should be adjusted in these proceedings; and the defendants asked leave to file a cross-bill in respect thereto. The fifth exception was taken to this paragraph, and while it has not been furnished us, it is plain enough that it was put upon the ground that the matters alleged were not pertinent to the case made by the bill. The exception was allowed, and the question was not in terms reserved. The defendants amended their answer by striking out the paragraph referred to, in compliance with the chancellor's order. They
9

now claim that the question was reserved by implication, and call attention to the rule relating to demurrers announced in *Westminster* v. *Willard,* 65 Vt. 266, 26 Atl. 952, and affirmed in *White River S. B.* v. *Capital S. B. & Tr. Co.,* 77 Vt. 123, 59 Atl. 197, 107 Am. St. Rep. 754. But the practice there referred to has not been extended to exceptions to answers; and the rule is that if the matter is improperly ordered to be expunged as impertinent, the party against whom the order is made is without remedy,—though the other party is not so situated for he could take advantage of the impertinence at the hearing. *Davis* v. *Cripp,* 2 Y. & C. 443. There is an added reason why, in this case, the defendants' position is untenable, and that is that the decree below was according to the agreement of the parties, and it appears that no claim was then made by the defendants that paragraph 30 should be considered or covered by the decree, and it was not in fact passed upon. So the defendants must be held to have waived it.

III. The master's report establishes enough of the material allegations of the bill to make a proper case for subrogation, and to bring the case well within the former decision. The defendants filed exceptions to the report which require brief consideration.

(1). The oratrix was admitted as a witness, and the defendants then objected and now insist that she was incompetent under P. S. 1589. It is true that she will or may be benefited by the result of this litigation. But that benefit will come, if it comes at all, through the will of George W. Wilder. She is not, in any proper sense, the "other party" to any contract or cause of action here in issue and on trial. These all relate to matters which transpired long before she came into the Wilder family.

(2). We need not stop to inquire whether or not Ellen Blanchard or her husband, Willis Blanchard, were competent witnesses, for all the facts to which their testimony relates,—with one exception too unimportant on the question of the right of subrogation to be noticed,—are expressly admitted by the answer to be true. So proof thereof was unnecessary, and the error in receiving the testimony of these witnesses, if any, was harmless.

(3). The finding that George W. Wilder was a surety on the mortgage note is fully sustained by the evidence. The very circumstances of the original transaction between Hubbard

and the Wilders compel the conclusion that as between Wilder and his wife, the debt was hers to pay. *Stevens* v. *Goodenough,* 26 Vt. at p. 683.

(4). The master's failure to find that the conveyance to Maria was not to her sole and separate use is not important or harmful. An inspection of the instrument discloses that her estate was not so limited, and it is a question for the court to decide. Besides, all agree that this is the effect of the deed as drawn.

(5). The exception to the finding that George W. paid off the mortgage to protect his own estate is without merit. The evidence on which it is based is not reported and so it must be presumed that it was sufficient. The finding itself is not inconsistent with the other facts found or with the testimony recited. The same may be said of the exception to the finding that the payment was not intended as an advancement.

(6). Neither the validity of the mortgage nor the rights of the oratrix thereunder depend in any degree upon its record. Its execution and delivery were enough to fix the rights of the parties to it, and their representatives here.

IV. The decree below was too large. It included interest on the Hubbard debt from the date of the death of Maria A., February 8, 1878, to the date on which George W. actually paid it, January 27, 1880. During that interval the interest on the debt was Wilder's to pay. After the death of Maria, he was tenant by the courtesy, and it was therefore his duty to keep down the interest. *Doane* v. *Doane,* 46 Vt. 485. So the basis of the decree should have been the amount due on the Hubbard mortgage at the date of the death of Maria A. That part of the decree which calls for a conveyance is inapt and unnecessary. In all other respects the decree is correct.

*The pro forma decree is affirmed and the cause is remanded with directions to alter the decree so as to exclude therefrom the interest on the Hubbard note from February 8, 1878, to January 27, 1880, and the provision therein for a conveyance from the defendants. Let the interest and the net rents and profits from July 16, 1906 to the date of the altered decree be adjusted, and a new time of redemption fixed. The defendants to recover costs in this court.*