KATE L. COLLINS, O. R. COLLINS AND CAPITAL SAVINGS BANK & TRUST CO. *v.* CITY OF BARRE.

January Term, 1917.

Present:  MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 1, 1917.

*Highways—P. S. 3878—Petition to Street Commissioners— Notice—Equity—Jurisdiction—Laches—Demurrer.*

An alteration in the road-bed of a highway, in the sense of P. S. 3878, begins when the lowering or raising of the road-bed exceeds three feet, a change in this respect of not more than three feet being

regarded as in the nature of ordinary repairs, and not as an alteration of the highway.

An alteration of a street by raising the road-bed more than three feet is not within the scope of a petition to a board of street commissioners asking for a resurvey and relocation of the street.

Without compliance with P. S. 3878, providing for notice to the owners of property abutting a highway of a proposed alteration therein by cutting down or raising the road-bed more than three feet, the action of a board of street commissioners in regard to such alteration is without jurisdiction and void so far as the owners of the property in question are concerned.

Where the action of a board of street commissioners in raising the road-bed of a street is without jurisdiction, by reason of lack of notice to the owner of an abutting property, as required by P. S. 3878, the record of the doings of the commissioners, in this regard, is not constructive notice to a subsequent purchaser of the property.

Equity has jurisdiction of a bill seeking damages for the unauthorized act of a board of street commissioners in raising the road-bed of the street in front of plaintiff's home, without first giving the notice required by P. S. 3878, because there is no adequate remedy at law and to prevent a multiplicity of suits.

The defence of laches cannot be raised by demurrer.

APPEAL IN CHANCERY. Heard on demurrer to the bill of complaint in vacation after the September Term, 1915, Washington County, *Waterman,* Chancellor. Decree, sustaining the demurrer, adjudging the bill insufficient and dismissing it with costs. The plaintiffs appealed.

STATEMENT BY WATSON, J.: The bill in this case was, *pro forma,* held insufficient on demurrer and dismissed for want of equity. The cause is here on plaintiffs' appeal. The facts stated below appear from the allegations in the bill.

The premises in question, being a dwelling house and lot situated on Warren Street in the City of Barre, were conveyed to the plaintiff, Kate L. Collins on March 31, 1908, by George F. Lackey and Nettie E. Lackey, by their deed of that date, recorded in the land records of the City of Barre. The plaintiff O. R. Collins is the husband of Kate L. The plaintiff Capital Savings Bank and Trust Company holds a mortgage on the premises,

given by Kate L. and her husband, on May 17, 1909, which is unpaid. At the time this mortgage was given the premises were worth fifteen or sixteen hundred dollars. At the time of the aforementioned conveyances, the grade of Warren Street (which was in front of and the only means of access to said premises) was about on a level with the bottom of the underpinning resting on the foundation supporting the dwelling house. Since those conveyances the city has raised the road-bed of Warren Street opposite and in front of these premises so that the street as now traveled and used is about on a level with the eaves of the dwelling house, or about twelve feet above the street as it was traveled and used at the time of the aforementioned conveyances. By reason of this change in the grade of the street, the premises have been rendered of little value being worth less than five hundred dollars.

On the 18th day of July, 1903, when one Cora E. Churchill and her husband C. A. Churchill were the owners of the premises in question, and residents of the City of Barre, a petition signed by certain landowners on Warren Street, and addressed to the Board of Street Commissioners City of Barre, was presented to the city council, requesting a resurvey and a relocation of the southeasterly end of Warren Street for about two hundred and eight-five feet, representing that the public good and the convenience and necessity of individuals demanded that such resurvey and relocation should be made, and waiving all claims for damages which the petitioners might be by law entitled to receive. This petition was referred by the city council to the board of street commissioners with instructions to have said portions of Warren street resurveyed and relocated in accordance with the petition if the same could be done without expense to the city. On July 24 the street commissioners issued a notice stating that such a petition had been presented to them, "asking that the easterly end of Warren Street for about two hundred feet should be resurveyed and relocated," and further stating that the city council had by vote decided "that said portions of said street should be resurveyed and relocated if in the judgment of said commissioners after a public hearing it should appear that the public good and convenience and necessity demand that said resurvey and relocation should be made and if said relocation can be made without expense to the said city." The notice then stated the time when, and the place where, the street

commissioners would hear "all those interested in said resurvey and relocation of said portion of Warren Street," etc. This notice was published in the Barre Daily Times, and a typewritten copy thereof was served on the city attorney and on Mrs. C. A. Churchill and Mrs. H. M. Dillingham personally, and on C. A. Churchill, James Baigries, and F. N. Braley, by leaving copy at residence. The record of the report of the proceedings upon the petition (set forth in the bill) states that the commissioners met at the time and place set forth in the notice, "and did hear all those who were present, and who were interested in the resurvey and relocation of said portion of said street," and viewed the premises; and "thereafter adjudged that the public good and the convenience and necessity of individuals did demand that said street should be resurveyed and relocated according to plans which accompany the report and which have been prepared by" the city engineer, bearing date on December 2, 1903, "now on file in the office of said engineer." The report then proceeds as follows: "We have also established the grade of said portion of said street as shown on plans which accompany the report and which bear date of December 3 and which were prepared by said city engineer." The report also states that the commissioners have awarded no one any damages, as no one claimed damage, and that in their "judgment all received benefits equal to any damage which they received by reason of said resurvey and relocation and grade established." This report was dated December 3, 1903, signed by the street commissioners, and received for record in the city clerk's office on the same day.

Neither Cora E. Churchill nor her husband was present at the hearing had pursuant to the aforementioned notice, and they never had any notice from the city council, the street commissioners, or any other city official, that any change in the grade of Warren Street in front of their said premises, was contemplated or for consideration. Neither the Churchills nor any other of the plaintiffs' predecessors in title, were ever notified of any time when the city council or any other officials of the city would hear the owner or owners of the premises now owned by the plaintiffs, upon the question of making any alteration or change in the grade of Warren Street in front of the same and in front of the dwelling house thereon, and none of them ever attended any hearing upon the question of damages occasioned by reason of any such alteration or change of grade. The plaintiffs

aver that the action of the city council and street commissioners, in so far as it pertained to an alteration or change of grade of Warren Street in front of the dwelling house mentioned, was without legal authority or justification, and was of no legal effect so far as those premises are concerned.

No change was made in the grade of that street in front of the premises in question after the proceedings upon the petition in 1903, until after the plaintiff Kate L. Collins had become the owner of said premises; but since that time the road-bed of that street in front of the dwelling house on the plaintiffs' premises has been raised more than three feet by the city, there being a continuous depositing of earth and stone there, covering a period of two or three years, which had the effect of raising the road-bed at that point about twelve feet. All this was done by the city without any notice to, or permission of, the plaintiffs, and the latter have never been tendered any damages caused thereby. The plaintiffs' premises have been damaged by this alleged unlawful action on the part of the city to an amount exceeding one thousand dollars, the house thereon being rendered uninhabitable; and the present condition of Warren Street in this respect constitutes a continuing injury to the plaintiffs, and an unwarranted and unlawful act by the city. The plaintiffs further aver that the action of the city in raising the road-bed in front of their premises in the way and manner described, was an invasion of their constitutional rights, in that it deprived them of their property without due process of law.

*Edward H. Deavitt* and *Frank J. Marshall* for the plaintiffs.

The proceeding for a change in the grade of the street, having been had without legal notice or justification, the plaintiffs are entitled to relief. P. S. 3878, 3879. *Railway Co.* v. *Workshop Board of Health,* 23 Beav. 198; *Wheeler et al.* v. *St. Johnsbury,* 87 Vt. 46; *La Farrier* v. *Hardy et al.,* 66 Vt. 200; *Lynch* v. *Rutland,* 66 Vt. 570; *Penniman* v. *St. Johnsbury,* 54 Vt. 306; *Hogaboon et als.* v. *Highgate,* 55 Vt. 412; *Barber* v. *Vinton et al.,* 82 Vt. 327; *Fairbanks et al.* v. *Rockingham,* 75 Vt. 221; *C. B. & Q. R. R.* v. *Porter,* 72 Iowa 426, 34 N. W. 287; 2 High on Injunctions, § 1271.

*William Wishart* for the defendant.

WATSON, J.   Section 3878 of the Public Statutes provides: "A selectman or road commissioner shall not alter a highway, by cutting down or raising the road-bed in front of a dwelling house or other building standing upon the line of such highway, more than three feet, without first giving notice to the owners thereof, of a time when the selectmen will examine the premises, hear them upon the question of making such alteration and damages by reason of such alteration; at which time, the selectmen shall attend and hear said owners, if they desire to be heard." By section 3879, if it shall be determined that the public good, or the necessity or convenience of individuals requires that such road-bed be altered by lowering or raising the same more than three feet, such change may be ordered, and the damages, if any, to the owners shall be determined and awarded.   The interpretation of the law of these sections was before this Court in *Fairbanks* v. *Rockingham,* 75 Vt. 221, 54 Atl. 186, and it was there held that an alteration in the road-bed in the sense of the statute, begins when the lowering or raising of the road-bed exceeds three feet; that a change in this respect of not more than three feet is regarded by the statute as in the nature of ordinary repairs, and not as an alteration of the highway.   So the case before us rests upon the allegations showing the raising of the road-bed in question to the extent of about nine feet in excess of that considered as of ordinary repairs.   Such an alteration was not within the scope of the petition to the street commissioners asking for a resurvey and a relocation of that portion of Warren Street, nor did the notice published and given to abutting landowners of a hearing on the petition, show that any question pertaining to the raising of the road-bed, was involved or to be considered.   The matter of grade is not mentioned in the record of those proceedings until that part of the report of the street commissioners, which shows their doings and conclusions reached. No one interested in the property here in question was present at the hearing had on the petition, nor consented to raising the road-bed, nor waived any rights relating thereto. On the question of making such alteration, as well as on the question of damages, the owner of the property in question was entitled to notice and an opportunity to be heard.   This was required by the statute, and was essential to the jurisdiction of the street commissioners of the subject matter of those questions.   Without compliance with the statute in this regard, the commissioners

were without jurisdiction to act on any question of raising the road-bed more than three feet, and their actions in this respect were void so far as the owners of the property in question are concerned. *La Farrier* v. *Hardy, et al.,* 66 Vt. 200, 28 Atl. 1030; *Lynch* v. *Rutland,* 66 Vt. 570, 29 Atl. 1015; *Barber* v. *Vinton,* 82 Vt. 327, 73 Atl. 881; *Wheeler* v. *St. Johnsbury,* 87 Vt. 46, 87 Atl. 349.

It is urged that at the time of the purchase by Mrs. Collins of the premises in question, she knew or should have known that the records of Warren Street then on file in the city clerk's office provided for the grade that was subsequently established. No notice of this kind in fact is shown; and since the action of the street commissioners in establishing a grade of more than three feet raise of the road-bed was without jurisdiction of the subject matter, as against the owners of the property in question, the record of the doings of the commissioners in this respect was not constructive notice to Mrs. Collins when she took the property by purchase.

It is further urged that the plaintiffs have an adequate remedy at law and therefore this bill in equity will not lie. But the case of *Wheeler* v. *St. Johnsbury,* cited above, is full authority to the contrary. There, in a case sufficiently like the one at bar as to equity jurisdiction to make it controlling here, it was held that equity had jurisdiction on two grounds, namely, for want of an adequate remedy at law, and the prevention of a multiplicity of suits.

And, finally, it is said that the plaintiffs are guilty of laches even if they were ever entitled to damages. But this defence cannot be raised by demurrer. *Drake* v. *Wild,* 65 Vt. 611, 27 Atl. 427; *Gleason* v. *Carpenter,* 74 Vt. 399, 52 Atl. 966; *Wilder's Ex'r* v. *Wilder,* 82 Vt. 123, 72 Atl. 203.

*Pro forma decree reversed, bill adjudged sufficient, and cause remanded.*