State v. Sessions, No. 182-04 Ancv (Katz, J., Dec. 9, 2005)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                                              SUPERIOR COURT
Addison County, ss.:                                         Docket No. 182-04 AnCv


ORLYK

v.

SESSIONS, KEINER & DUMONT


ENTRY


        This is a malpractice claim in which plaintiff sues two attorneys who were partners in the firm which represented her in her 1986 divorce. She alleges that the firm breached its duty to her by obtaining a pension settlement which failed to include appreciation on the capital portion attributed to her--one-half as of the time of the divorce. Plaintiff's underlying factual position is somewhat unclear. It may be her position that she originally understood she would enjoy such appreciation, see

Complaint ¶ 20, until she lost a 2003 Family Court proceeding to "reform" the original agreement and decree. Or it may be that she never understood anything until her 2003 unsuccessful Family Court result was explained as a failure to bargain for or otherwise obtain a fair settlement back in 1986. Either
way, defendant attorneys now move for summary judgment on grounds of the statute of limitation or laches.

Initially, we reject the claim of laches. This is an ancient doctrine of chancery. It applies to actions seeking equitable remedies. The cases cited by defendants are good examples. Raymond's Admr. v. Hall, 114 Vt. 363 (1946) was an action to remove a cloud on title to lands. Such an action, and the declaratory decree which terminates it, were equitable in nature. The trial judge is labeled "Chancellor" on the decision's first page, the final act of that person was a "decree," 114 Vt. at 365, which was substantially affirmed. Similarly, Wilder's Exr. v. Wilder, 82 Vt. 123 (1909), is fairly brimming with the language of chancery--decree, oratrix, chancellor-- starting out with the first sentence of the opinion "the court of chancery had jurisdiction...." 82 Vt. at 127. The remedy there sought was a declaration of the extent of subrogation rights in a mortgage. It is characterized in the opinion as "an equitable right." Id., at 128.

> The defense of laches generally applies to equitable actions and remedies. Laches thus may apply to bar reformation of a contract, rescission, an equitable proceeding to set aside a probate decree, quiet title actions, injunctive relief. 27A Am.Jur.2d Equity, §149.

Laches particularly does not apply to actions for damages. Id., §150, citing Landreth v. First Nat'l Bank, 45 F.3d 267 (8th Cir. 1995); Patton v. Bearden, 8 F.3d 343 (6th Cir. 1993). We have been pointed to no Vermont authority in which the doctrine has been applied to an action at law. The

merger, procedurally, of chancery and law courts in the modern Civil Rules, Rule 2, V.R.C.P., does not alter the substantive law to be applied, in which category laches and limitations certainly fall. Finally, we note that defendants' quotation from Fitzgerald v. Congleton, 155 Vt. 283, 288 (1990), to the effect that "in Vermont attorney-malpractice actions 'the nature of the harm done is the determining factor'" for limitations purposes. They misapprehend the holding in Fitzgerald. That case considered whether Vermont's three year personal injury statute of limitation or six year general civil limitation should govern the claim. Its holding is that the personal injury statute governs claims for emotional distress, although claims for expenses in recovering custody of the child in the underlying action were governed by the six year statute. 155 Vt. 289-93. Fitzgerald v. Congleton has nothing to do with laches or claims for equitable relief.

We are similarly not persuaded by the foreign authority cited by defendants. Vredenburgh v. Jones, 349 A.2d 22 (Del.**Ch.** 1975) (emphasis supplied) is a Delaware Chancery court action, seeking to require an attorney to return to an estate an interest in the testator's mine, together with all profits garnered thereon. Although it weighs a defense of laches, it was not, as is the present action, one at law for money damages. Lewis v. Poel, 156 N.W.2d 41 (Mich.App. 1967), was an action "brought by plaintiff against defendants for an accounting and other specified relief as to the distribution of 3 estates." Id. Again, a remedy in chancery, not one at law seeking a simple money judgment. Therefore, the discussion and indeed application of laches is not persuasive.

Turning to the statute of limitations defense, defendants assert that it began to run with the entry of the divorce decree, back in 1986. Plaintiff disputes this conclusion by relying on the discovery rule and asserting that, as a high school graduate only, with no knowledge of the time value of

3

money, she did not actually discover her injury until the Family Court ruling was explained to her in 2003.

Defendants assert that this claim arises from litigation and that established caselaw from around the country mandates the conclusion that the statute of limitation commenced to run with entry of final judgment, in this case the divorce decree. Wettanen v. Cowper, 749 P.2d 362, 365 (Alaska 1988); Cantu v. St. Paul Companies, 514 N.E.2d 666, 668 (Mass 1987); Neylan v. Moser, 400 N.W.2d 538, 542-43 (Iowa 1987); Suzuki v. Holthaus, 375 N.W.2d 126, 129 (Neb. 1985); Richardson v. Denend, 795 P.2d 1192, 1195 (Wash.App. 1990); Zakak v. Broida and Napier, P.A., 545 So.2d 380, 381 (Fla.App. 1989); Zupan v. Berman, 491 N.E.2d 1349, 1352 (Ill. App. 1986); Don Reid Ford, Inc. v. Feldman, 421 So.2d 184, 185 (Fla.App. 1982); Matthies v. Knodel, 573 P.2d 1332, 1334 (Wash. App. 1977); Associated Realty Co. v. Kimmelman, 311 A.2d 464, 466-67 (Md.App. 1973).

Perhaps the case is not quite so simple. Several possible situations could have resulted from the 1986 divorce:

- Plaintiff may have been dissatisfied with the basic unfairness of only receiving $20,000 when she reaches retirement age, surely enough for perhaps one year;
- Plaintiff may have believed she would see the $20,000 grow through the accrual of interest or dividends to a far more substantial sum, meaning she truly did receive one-half the 1986 pension value;
- Plaintiff may have bargained for only $20,000 at retirement time, no accrued interest, because it was part of the overall settlement, and she got something else in return, perhaps an uncontested, earlier divorce;
- Plaintiff just never thought about the issue.

4

Plaintiff's counsel, at oral argument, dwelled on the last possibility, emphasizing his client's lack of sophistication. This line of argument, however, presupposes a wholly subjective application of the discovery rule's requirement that plaintiff have known or reasonably should have known of her potential claim against defendants. The discovery rule, however, contains an objective standard. A statute of limitations begins to run when plaintiff has information or could obtain information sufficient to put a reasonable person on notice of defendant's liability. Fritzeen v. Gravel, 2003 VT 54, ¶ 8, 175 Vt. 537, 539. Thus, a plaintiff is allowed the same period of time that a reasonable person would have required to make the discovery that his or her legal rights had been violated. Kauffman v. State Farm Mut. Auto Ins. Co., 857 F. Supp. 23, 25 (D. Vt. 2004) *citing* Ware v. Gifford Memorial Hospital, 664 F.Supp. 169, 171 (D.Vt.1987). In the absence of disputed facts, the question whether a plaintiff knew or should have known of the injury and that it was wrongfully caused is a question of law, to be determined by the trial judge. Moll v. Abbott Laboratories, 444 Mich. 1, 5-6, 506 N.W.2d 816, 819 (Mich. 1993); Wells v. Travis, 284 Ill.App.3d 282, 286, 672 N.E.2d 789, 792, (Ill.App. 2 Dist.,1996); Griffiths-Rast v. Sulzer Spine Tech, Inc., 2005 WL 2237635 (D.Utah Sept. 14, 2005).. We conclude that Plaintiff failed to make a reasonable inquiry that would lead to the discovery of her claims. It is undisputed that over the eighteen year period between the signing of the decree and the filing of plaintiff's suit, plaintiff make no inquiry with regard to the pension funds. While Plaintiff possessed the necessary facts to make an inquiry of the pension funds, she simply did not approach anyone to ask. We therefore conclude based on this undisputed fact that Plaintiff cannot rely on the discovery rule here.

The third possibility, that she always believed she would get $20,000

5

and $20,000 only, is actually supported by plaintiff's memo opposing summary judgment. There, plaintiff's deposition testimony is quoted, to the following effect:

> In connection with [her meeting with matrimonial attorney Schoenberg in 2003] "I just knew I wanted – I needed $20,000.00, and I thought I had it coming to me sooner or later, so I was going to find out when I could get it." [Presumably deposition transcript] 74.

If, indeed, she was expecting $20,000, and that is what was obtained through the original divorce, then there is no statute of limitation issue, but there is also no claim. The settlement stipulation and resulting divorce decree correctly gave voice to what she understood was her settlement. Of course, this is not a finding of fact, there has been no trial. But the record at this point affirmatively suggests an absence of negligence.

The second possibility, that she expected the $20,000 to grow through investment is one which raises the question of why she never received a report of her investment interest. A plaintiff is charged with knowledge of information that could have been acquired with reasonable diligence. Agency of Natural Resources v. Towns, 168 Vt. 449, 452-453 (Vt. 1998). We conclude that any reasonable person, not merely the sophisticated investor, would expect to receive financial statements on a pension. The Social Security Administration sends them out once per year. Private pension administrators do as well, on a regular basis. *See* 29 U.S.C. § 1024(b)(3) (ERISA administrator must provide participants annual statements and schedules). Perhaps plaintiff did not think about it for a year or two after her divorce, but at some point, the exercise of due diligence would have prompted her to inquire why none had ever been received. Such an inquiry surely must have been made within five years of

6

the divorce, but even were made within ten, it would have resulted in the running of the six year limitation period prior to the filing of this action.

Finally, the first alternative might have been that plaintiff was dissatisfied with her divorce outcome. Were this the case, she was clearly on notice that perhaps her lawyer had not adequately represented her. In that case, the discovery rule does not wait for her to have nailed down every aspect of the case. Instead, it gives her six years to make inquiry. In this alternative, clearly plaintiff permitted the statute to run long before commencing this action.

Defendant points to yet another significant fact in this case. In 1994, plaintiff "was told by her husband that there should be QDRO establishing her interest in his retirement plan." Deposition Tr. 63. Being informed that she should have received a document securing her interest in the pension, and knowing that she had never received one, would put the reasonable person on notice that something was wrong, something demands investigation. Such information would have resulted in the statute expiring four years before this action was commenced.

In sum, it is plaintiff's burden to show that the discovery rule exonerates her from the apparent effect of a six year statute of limitation. She has presented no evidence to meet her burden. Her expert's opinion may go to the question of liability, but it is irrelevant to the limitation issue. Plaintiff's arguments really add up to little more than "clients don't know the law, and should never be held to knowing or investigating anything." In effect, that would have the effect of eviscerating the statute of limitation for legal malpractice cases. We are persuaded such is not the law.

Motion for summary judgment granted.

7

Dated at Middlebury, Vermont, _____, 200__.

_____