HALL, RESPONDENT, *v.* HALL, APPELLANT.

(No. 5,422.)

(Submitted April 25, 1924. Decided May 19, 1924.)

[226 Pac. 469.]

*Divorce—Vacation of Decree—Fraud and Collusion—Evidence —Sufficiency—Laches—Remarriage of Defendant—Effect on Action of Court—Discretion.*

Courts—Party Successfully Invoking Jurisdiction Estopped to Thereafter Question It.
   1.  Under the rule that one who invokes the aid of a court in his own cause and secures all the relief he seeks will not thereafter be heard to question the court's jurisdiction, a wife who in her action for a divorce secured a decree could not move for its vacation on the ground of want of jurisdiction in the court to render it.

Divorce—Fraud—Vacation of Decree—Motion in Original Action Proper Practice.
   2.  Where a decree of divorce was nominally in favor of plaintiff wife but was in fact in favor of the defendant, and the plaintiff was induced to procure it through fraud perpetrated upon her by defendant to enable him to marry another woman, she could properly proceed in the original action by motion to have it vacated, under section 9187, Revised Codes.

Motion—When Sufficient.
   3.  A motion is but an application for an order, is not a pleading, does not require an answer and is not subject to the general rules which regulate pleadings; if it fairly apprises the court of the grounds upon which relief is sought it is sufficient.

Trial—Failure of Court to Rule upon Objections to Evidence—When Nonprejudicial.
   4.  Repeated failure of the trial court in a proceeding to vacate a decree of divorce to rule upon objections to offered evidence and its action in permitting it to be received "subject to the objections," thus depriving counsel of knowledge whether it was or was not before

[70 Mont. 460.]

the court in arriving at its decision, if error, *held* nonprejudicial where the evidence in each instance was not of any substantial materiality and could not have affected the result whether the court did or did not consider it.

Divorce—Nature of Fraud for Which Court may Vacate Decree.

5. While the authority of a court of equity to vacate a decree of divorce obtained by fraud is inherent, the acts for which the relief may be granted have reference only to fraud which is extrinsic or collateral to the matters tried by it, and not to fraud in the matters on which the decree was rendered.

Same—What Does not Constitute Extrinsic Fraud for Which Decree may be Set Aside.

6. Neither the falsity of the allegations of the complaint in an action for divorce nor the falsity of the testimony given upon the trial constitutes extrinsic fraud for which the decree may be set aside.

Same—Setting Aside Decree for Collusion.

7. A decree of divorce may be annulled for collusion if the application is seasonably made in good faith and not for any expected personal advantage, especially where it clearly appears that the other party by fraud or otherwise created some or all of the applicant's motives for colluding to procure it.

Same—Collusion—Sufficiency of Evidence to Warrant Vacation of Decree.

8. Evidence adduced in a proceeding to set aside a decree of divorce obtained by fraud practiced upon the wife by her husband to induce her to bring the divorce action, *held* sufficient under the above rule (par. 7) to warrant vacation of the decree on the ground of collusion, it being apparent that the wife in bringing the action relied upon false representations and promises of the husband and acted under his coercive influence.

Same—Vacation of Decree—Laches.

9. Under the rule that mere delay in proceeding to the enforcement of a right is not laches but that to constitute laches the delay must have worked injury to another, *held* that where defendant two days after his wife secured a divorce married another woman, alleged delay on the part of his former wife in not filing her motion to set aside the decree on the ground of collusion induced by fraud until five months had expired after rendition of the decree, did not constitute laches, since no prejudice could have resulted to him from the delay.

Same—Motion to Vacate Decree—Remarriage of One Party—Fact Addressed to Discretion of Court.

10. In determining whether a divorce decree shall be set aside on the motion of one of the parties to it, the fact that one of them has remarried in the meantime is addressed to the discretion of the trial court and its action in the premises will not be disturbed unless the discretion has been abused.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

ACTION by Ida Cudell Hall against James Monroe Hall for divorce. Decree of divorce was entered on defendant's de-

fault, and plaintiff moved to set decree aside. From the order vacating it, defendant appeals. Affirmed.

*Mr. E. G. Toomey,* for Appellant, submitted a brief and argued the cause orally.

If fraud in the divorce action is shown, it is intrinsic fraud willingly practiced upon the court by plaintiff. The case at bar is ruled by *Clark* v. *Clark,* 64 Mont. 386, 210 Pac. 93. (See *Reeves* v. *Reeves,* 24 S. D. 435, 25 L. R. A. (n. s.) 574, 123 N. W. 869; *Zeitlin* v. *Zeitlin,* 202 Mass. 205, 132 Am. St. Rep. 490, 88 N. E. 762; *Boyd* v. *Boyd,* 226 Mass. 542, 116 N. E. 270; *Greene* v. *Greene,* 2 Gray (Mass.), 361; *Blair* v. *Blair,* 96 Kan. 757, 153 Pac. 544; *Routledge* v. *Patterson,* 146 Wis. 226, 131 N. W. 346; *Faulkner* v. *Faulkner,* 90 Wash. 74, 155 Pac. 404; *Slosson* v. *Slosson,* 192 Ill. App. 259; *Cooper* v. *Cooper,* 92 Wash. 87, 158 Pac. 1007; *Holmes* v. *Holmes,* 189 Iowa, 256, 176 N. W. 692; *Hatcher* v. *Hatcher,* 183 Ky. 270, 209 S. W. 36.)

Plaintiff's cases are all cases of extrinsic fraud, and as such wholly inapplicable under the facts of this case; or, otherwise distinguishable in fact and on principle.

Collusion: Where the moving party exhibits unclean hands, is herself guilty of collusion, and, repenting, would take advantage of her own wrong, the court will leave movant where it finds her, particularly where, as here, movant perjured herself in her testimony on her motion to vacate. (*Newman* v. *Newman,* 27 Okl. 381, 112 Pac. 1007; *Robinson* v. *Robinson,* 77 Wash. 663, 138 Pac. 288; *Paynton* v. *Paynton,* 194 Mich. 504, 160 N. W. 837; *Szlauzis* v. *Szlauzis,* 255 Ill. 314, Ann. Cas. 1913D, 454, 99 N. E. 640; *Lanktree* v. *Lanktree,* 42 Cal. App. 648, 183 Pac. 954; *Bancroft* v. *Bancroft,* 178 Cal. 359, 173 Pac. 579.) Will the state, anxious to sustain the integrity of the marriage relation, wreak disaster on the head of a young woman who is lawfully wed to the man Ida Cudell Hall divorced after twelve years of married life? Will the state

sanction the caprice of a woman even if by so doing children may be bastardized?

The fact of remarriage to an innocent party must prevail over the fact of willful marriage destruction, as in this case. In *Brockman* v. *Brockman,* 133 Minn. 148, 157 N. W. 1086, the court said: "Where a new marriage alliance has been formed in reliance on the decree of divorce the state has an interest in that as well, and that fact must be taken into account in any action or proceeding to set aside the divorce decree."

*Mr. Jos. R. Wine* and *Messrs. Whitman & Miller,* of the Bar of Chicago, Illinois, for Respondent, submitted a brief; *Mr. Wine* and *Mr. Henry G. Miller* argued the cause orally.

The order here appealed from should be affirmed because the divorce under consideration was in fact obtained by the defendant and not by the plaintiff in the suit, and in and about obtaining it the defendant was guilty of practicing gross fraud, both extrinsic and intrinsic, on the plaintiff and on the court; and in addition there was collusion between the defendant and the attorney who of record represented the plaintiff. The defendant's hasty and unseemly remarriage within two days after the divorce decree was entered does not aid his case, nor does the fact that the plaintiff signed the complaint and deposition bar her from relief. (*Cobb* v. *Cobb,* 43 S. D. 388, 179 N. W. 498; *Olmstead* v. *Olmstead,* 41 Minn. 297, 43 N. W. 67; *Whitcomb* v. *Whitcomb,* 46 Iowa, 437; *Nichells* v. *Nichells,* 5 N. D. 125, 57 Am. St. Rep. 540, 33 L. R. A. 575, 64 N. W. 73; *Winder* v. *Winder,* 86 Neb. 495, 125 N. W. 1095; *Simpkins* v. *Simpkins,* 14 Mont. 386, 43 Am. St. Rep. 641, 36 Pac. 759; *Graham* v. *Graham,* 54 Wash. 70, 18 Ann. Cas. 999, L. R. A. 1917B, 405, 102 Pac. 891; *McDonald* v. *McDonald,* 175 Mo. App. 513, 161 S. W. 815; *Lake* v. *Lake,* 124 App. Div. 89, 108 N. Y. Supp. 964; *Dennis* v. *Harris* (Iowa), 153 N. W. 343; *True* v. *True.* 6 Minn. 460.)

The "collusion" in this case between Hall and his wife in which she was an injured and unwilling participant is not of a character to require the reversal of the decree appealed from. On the contrary, such "collusion" requires its affirmance. Where the parties are not equally at fault, collusion between them is not a bar, but is an aid to the setting aside of a divorce on bill or motion on behalf of the innocent party. (See *Cobb* v. *Cobb,* and other cases cited above; also *Rehfuss* v. *Rehfuss,* 169 Cal. 86, 145 Pac. 1020, where the divorce was set aside largely on the ground that there was collusion between the parties in obtaining it.)

Even if a wife were held to be barred from relief in a case of this character, still the lower court had the power and it was its duty to set aside, on its own motion, the fraudulent divorce decree here in question. (*Rehfuss* v. *Rehfuss; Winder* v. *Winder; Graham* v. *Graham, supra; People* v. *Case,* 241 Ill. 279, 25 L. R. A. (n. s.) 578, 89 N. E. 638; *Yeager* v. *Yeager,* 43 Ind. App. 313, 87 N. E. 144; *State* v. *Moore,* 46 Nev. 65, 207 Pac. 75; *Powell* v. *Powell,* 80 Ala. 595, 1 South. 549; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; 2 Bishop on Marriage, Divorce, & Separation, secs. 496, 498, 663.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Ida Cudell Hall and James Monroe Hall were married at Chicago in January, 1911, and two children, now minors, were born of the union. On September 27, 1922, Mrs. Hall commenced an action in the district court of Lewis and Clark county, Montana, to secure an absolute divorce on the ground of extreme cruelty. Hall interposed a general demurrer, and when it was overruled he declined to plead further. His default was entered and on October 5 the court heard the evidence offered by plaintiff (her deposition), and a decree of divorce was rendered and entered in conformity with the complaint. Two days later Hall married another woman. In March, 1923,

Mrs. Hall moved the court to vacate the decree upon several grounds which may be grouped roughly as (a) want of jurisdiction in the court to render the decree; (b) fraud perpetrated by the defendant; and (c) collusion of the parties. The motion was supported by the affidavit of Mrs. Hall, and the motion and affidavit will be designated the moving papers. After a lengthy hearing, the court vacated the decree, and defendant appealed from the order.

The testimony taken upon the hearing is presented in a bill of exceptions which comprises more than 500 pages of the record. No useful purpose would be served by setting forth even a *résumé* of it. Reference to it will be made from time to time as the occasion requires. There are certain preliminary questions which may be disposed of somewhat summarily.

1. The first ground of the motion was apparently treated [1] as without merit by the trial court, and will be so treated by us, upon the broad principle that a party who invokes the aid of a court in his own cause and secures all the relief which he seeks will not thereafter be heard to question the jurisdiction of the court. (Nelson on Divorce and Separation, sec. 1055; *Warren* v. *Warren*, 73 Fla. 764, L. R. A. 1917E, 490, 75 South. 35; *Feyh's Estate*, 52 Hun, 102, 5 N. Y. Supp. 90; *Hewitt* v. *Northrup*, 75 N. Y. 506.)

2. The right of plaintiff to proceed in the original action [2] by motion to have the decree vacated for fraud or collusion is questioned; but in *Clark* v. *Clark*, 64 Mont. 386, 210 Pac. 93, and in *State ex rel. Sparrenberger* v. *District Court*, 66 Mont. 496, 214 Pac. 85, without deciding the matter, we assumed that section 9187, Revised Codes of 1921, warrants such procedure, and we are satisfied that the assumption was justified. If a judgment, though nominally in favor of the plaintiff, is in fact in favor of the defendant, and the plaintiff was induced to procure it through fraud perpetrated by the defendant, the terms of section 9187 are sufficiently broad to permit relief to be had. (*Bacon* v. *Bacon*, 150 Cal. 477, 89

Pac. 317; *Palace Hardware Co.* v. *Smith,* 134 Cal. 381, 66 Pac. 474; *Brackett* v. *Banegas,* 99 Cal. 623, 34 Pac. 344.)

3. Defendant insists that the moving papers are insufficient [3] to authorize the court to proceed to a hearing or to grant the relief sought. A motion is but an application for an order (section 9772, Rev. Codes); it is not a pleading (section 9127), and does not require an answer (19 R. C. L. 672). It is not subject to the general rules which regulate pleadings, but, if it fairly apprises the court of the grounds upon which the relief is sought, it is sufficient. The objection now under consideration is without merit.

4. Complaint is made of the manner in which the hearing [4] was conducted. The record discloses that in many instances the trial court declined to rule definitely upon objections made to offered evidence, but announced that the evidence would be received "subject to the objections"—whatever that may mean. With few, if any, exceptions, no final ruling was made upon any of these offers. Defendant righly complains that he was unable to know during the progress of the hearing, or afterwards, whether plaintiff's evidence, received subject to his objections, or his evidence received subject to plaintiff's objections, was before the court upon the final determination. If any of the evidence so treated were of substantial materiality a serious question would be presented; but after a careful review of the evidence we are satisfied that the result could not have been affected whether the evidence so treated was considered by the court as before it, or excluded. We do not assume to announce a general rule, but, confining our observations to the facts of this particular case, conclude that the errors, if errors they were, did not prejudice the substantial rights of the defendant, and are to be disregarded. (Sec. 9191, Rev. Codes.) Likewise we are satisfied that the court did not commit any reversible errors in its rulings upon the admission of evidence.

Upon the merits of the case elaborate briefs have been presented in which decided cases almost without number are cited in support of the contentions advanced by the respective parties. Indeed, it may be said fairly that upon each of the principal propositions discussed the authorities are in hopeless conflict. We shall not attempt to analyze them, and to reconcile the decisions is impossible. We do not flatter ourselves that our conclusions will be free from criticism, but of necessity they must rest upon what appears to us to be the better reasoning.

In her moving papers Mrs. Hall informs the court that the [5] allegation of her complaint charging Hall with extreme cruelty, and her testimony given by deposition in support of that allegation, were false *in toto;* that she was induced to make the allegation and to give the testimony by the false representations and promises of Hall; and that the decree was obtained through the collusion of the parties, she acting innocently.

While the authority of a court of equity to vacate a decree of divorce obtained by fraud is inherent, the acts for which the relief may be granted have reference only to fraud which is extrinsic or collateral to the matters tried by the court, and not to fraud in the matters on which the decree was rendered. (*Clark* v. *Clark,* above.) In order to reach a judgment in the divorce action it was necessary for the court to determine whether the allegations of the complaint were true, and to that end to determine the truth or falsity of the evidence given in support of those allegations. In other words, the matters which it is now claimed constitute the fraud practiced upon the court are the very matters upon which the court passed in arriving [6] at a judgment. Neither the falsity of the allegations in the complaint nor the falsity of the testimony given upon the trial constitutes extrinsic fraud within the meaning of the rule. (*United States* v. *Throckmorton,* 98 U. S. 61, 25 L. Ed. 93 [see, also, Rose's U. S. Notes]; *Garrett Biblical Institute* v. *Minard,*

82 Kan. 338, 108 Pac. 80; *Cantwell* v. *Johnson*, 236 Mo. 575, 139 S. W. 365. See, also, cases cited in the notes to L. R. A. 1917B, at page 446.)

If the court may set aside the decree upon plaintiff's allegations that the recitals in the complaint and the testimony given at the trial were false, for the same reason it may now set aside the order under review upon defendant's allegations that the recitals in the plaintiff's motion and the testimony given by her upon this hearing were untrue, and so on *ad infinitum.* But the law does not sanction any such consequences; hence the reason for the rule that it is only for extrinsic fraud that the decree may be vacated.

That the decree was obtained by collusion of the parties is [7] conceded, and the question arises: Was the court justified in vacating it upon that ground of plaintiff's motion?

The proceeding under section 9187 above is essentially equitable in character, and defendant contends that a court of equity will not entertain a motion to vacate a decree obtained by collusion, but will leave the parties where their wrongful conduct placed them. Numerous decided cases are cited which support the contention, though many other cases holding to the contrary are to be found, and the authorities are practically unanimous in holding that a court may of its own motion vacate a decree obtained by collusion of the parties. Conceding that a party to the collusion may not obtain relief as a matter of right, nevertheless, if the court grants the motion, the result is not different from what it would be if the motion were denied and relief granted by the court *sua sponte.* We think the correct rule is stated in 19 C. J. 168, as follows: ''If the application is seasonably made in good faith and not from any expected personal advantage a collusion decree may be annulled, especially where it clearly appears that the other party by fraud or otherwise created some or all of the applicant's motives for colluding to procure the decree.'' (See, also, 9 R. C. L., p. 451.)

Only the briefest summary can be made here of the charges
[8]  of fraud alleged to have been practiced by Hall upon
Mrs. Hall to induce her to join in procuring the decree of
divorce and of the testimony given upon the hearing in sup-
port of those charges.  According to Mrs. Hall's version, Hall
represented to her that he had become hopelessly insolvent;
that he had wrongfully disposed of securities confided to him
by Mrs. Hall's grandmother; that a lucrative position, open
only to unmarried men, could be secured by him if he were not
married; that it was necessary that they be divorced in order
to enable him to secure the position, redeem the securities and
become able to support her and their children, and that at
the expiration of two years he would remarry her; that unless
she institute the action he would commence an action for di-
vorce against her; that she believed these representations to
be true and relied with confidence upon Hall's promise, and
because of these representations and promise and her confidence
and trust in Hall she was induced by him to institute the ac-
tion as plaintiff, to sign and verify the complaint and to give
the deposition as she did.

She testified that the subject, divorce, was never mentioned
until September 22, when Hall made the representations and
promise referred to, and induced her to sign the complaint
which she verified on the day following; that she did not want
a divorce and did not have any ground upon which to secure
one; that but for a brief interval in 1917 their married life
had been happy; that the complaint in the divorce action had
been prepared at the instance of Hall without her knowledge
or consent, and that she was urged by Hall to sign and verify
it, and that he represented to her that the allegation concern-
ing his extreme cruelty was necessary in order that the divorce
might be secured; that she did not employ nor pay counsel to
represent her in the action; that she signed and verified the
deposition at Hall's solicitation and in reliance upon his prom-
ise and representations; and that all of the representations,

except possibly the statement concerning his financial difficulties, were false.

The record discloses beyond controversy that during July and August, 1922, Hall was in the Yellowstone Park on two or three occasions and there met the woman whom he married in October following; that about the middle of September he appeared at the office of C. A. Spaulding, an attorney at Helena, and there related his story of his matrimonial troubles; that upon the facts stated he was advised by the attorney that either he or Mrs. Hall had legal grounds for divorce; that Mr. Spaulding then prepared two complaints, one in which Hall was named plaintiff and in which Mrs. Hall was charged with extreme cruelty, the other in which Mrs. Hall appeared as plaintiff and in which Hall was charged with extreme cruelty; that these papers were delivered to Hall, who took them to Chicago, and on September 22 made the representations and presented to Mrs. Hall the complaint in her action against him, which she read over and verified on the day following. Hall returned that complaint to Mr. Spaulding, who caused it to be filed on September 27. While in Helena, on the occasion just referred to, Hall arranged that, if Mrs. Hall's complaint were filed, Mr. Spaulding should appear for her and A. P. Heywood should appear for him, but, if Hall's complaint were filed, Mr. Spaulding should appear for him and Mr. Heywood for Mrs. Hall. As heretofore stated, Mr. Spaulding did appear for her, and Mr. Heywood interposed the demurrer for Hall, which was overruled. Upon stipulation of the attorneys Mrs. Hall's deposition was taken. Mr. Spaulding prepared the interrogatories which he forwarded to Hall at Chicago, and Hall himself wrote out the answer to every question, and in one of the answers he set forth particularly the acts which constituted his extreme cruelty. These answers were read over by Mrs. Hall, and were sworn to by her on October 2 before a notary public whose services were procured by Hall, and the deposition was then forwarded by the notary to the clerk of the dis-

trict court at Helena. As soon as the deposition reached Helena the cause was brought on for trial and the decree rendered on October 5. Hall paid Mr. Spaulding for the services he rendererd in procuring the divorce. From the time the complaint was verified until the deposition was completed, Hall continued to live in the apartment occupied by Mrs. Hall and their children in Chicago. He left Chicago on October 2 or 3, and arrived in Helena about October 6, when he was informed by Mr. Spaulding that the decree had been entered, and on October 7 he married.

The trial court in its findings recited the foregoing facts, and many others too numerous to be repeated here. It accepted Mrs. Hall's testimony given upon this hearing as true, and, if true, it cannot be urged seriously that the evidence in its entirety preponderates against the findings. But counsel for defendant contends earnestly that the court was not justified in accepting Mrs. Hall's version. Confessedly, according to her present story, she had verified a complaint, the material recital of which was not true, and had given testimony by deposition which was false. But we are unwilling to say under the circumstances that because of these wrongs alone she is altogether unworthy of belief or that she may never be permitted to disclose the truth and the reasons which induced the falsehoods. There is much in Hall's testimony which tends to corroborate Mrs. Hall. He denied that he promised to remarry her or that he coerced her to institute the action for divorce, or to sign or verify the complaint or swear to the answers to the interrogatories. He testified that their married life had been most unhappy, but letters which he wrote to Mrs. Hall when absent from her, almost up to the very day (September 22) when he first suggested a divorce and presented to her his ready-made complaint for her signature and verification, tend to discredit him. A reference to one of these letters will suffice. On September 16, 1922, he wrote to her from Helena, as follows:

"Dearest Sweetheart: For the past week I have been jumping around so that I haven't had time to write. Most of the nights we have spent out in the camps and we have never been to the Falls, and in the morning start for Wyoming. I don't know where I will be, but will be in Thermopolis within the next few days. I won't stay there any length of time but will get my mail so write me there. I haven't had a letter from you since I left here, but am having my mail forwarded from the Falls and get it in Thermopolis. There is a chance that I may have to go to Denver and possibly on to Chicago towards the last of the month but I am not sure yet. If I do come it will only be for a couple of days and I will have to rush back and finish the work. I think I can finish by about October 20th. Jack goes home to-morrow. He has been in Wyoming for ten days and just arrived here to-day. Am glad you paid the insurance. I will send you a check as soon as I can get one from the Genl. Mngr. I am overdrawn at S. & W. now. A heart full of love and kisses for you and the boys from yours,

"Jim."

This letter was written within two days, at most, of the time when Hall consulted the attorney and had the two forms of complaint prepared. We agree with the trial court that the evidence fairly compels the conclusion that Hall had become infatuated with the woman whom he assumed to marry on October 7, and in order to be free to carry out his purpose he conceived the idea of a divorce and planned the entire scheme and managed the proceedings which apparently enabled him to accomplish his purpose; that the representations which he made to Mrs. Hall were false, and his promise to remarry her a mere trick to lull her into a sense of security. Under these circumstances a court would have to be insensible to every instinct of right or justice to permit the decree to stand. Though not directly in point upon the facts, in principle the following cases support our conclusion: *Cobb* v. *Cobb*, 43 S. D. 388, 179 N. W. 498; *Omstead* v. *Omstead*, 41 Minn. 297, 43 N. W. 67;

*Lake* v. *Lake,* 124 App. Div. 89, 108 N. Y. Supp. 964; *Dennis* v. *Harris,* 179 Iowa, 121, 153 N. W. 343; *Phillips* v. *Chase,* 203 Mass. 556, 17 Ann. Cas. 544, 30 L. R. A. (n. s.) 159, 89 N. E. 1049; *Holt* v. *Holt,* 23 Okl. 639, 102 Pac. 187; *McDonald* v. *McDonald,* 175 Mo. App. 513, 161 S. W. 850; *Graham* v. *Graham,* 54 Wash. 70, 18 Ann. Cas. 999, L. R. A. 1917B, 405, 102 Pac. 891; *Winder* v. *Winder,* 86 Neb. 495, 125 N. W. 1095. (See, also, notes to L. R. A. 1917B, 411–512.)

We need not stop to determine whether the fraud practiced upon Mrs. Hall by Hall is of such character that it alone would justify vacating the decree; we do hold, however, that the trial court was justified in accepting Mrs. Hall's explanation of her participation in the collusion; that Mrs. Hall was a mere puppet who acted under the coercive influence of Hall, and that her dereliction in aiding to procure a decree by collusion was not of such character as should preclude her obtaining relief. That Hall practiced the grossest fraud upon her is not open to doubt, and that by reason of that fraud alone she was led to do what she did, is reasonably certain. A decree of a court of conscience ought not to afford a sanctuary for fraud.

It is contended further that Mrs. Hall was guilty of laches. [9] The decree was entered on October 5, 1922, and the motion to vacate it was not filed until March 19, 1923. However, it was filed and presented within the six-month period allowed by section 9187, Revised Codes. In explanation of the delay Mrs. Hall testified that Hall enjoined secrecy; that in November, 1922, she disclosed the facts to her brother, and at his suggestion consulted Chicago counsel who made an investigation, and who, with Helena counsel, prepared and filed the motion.

The term "laches" is defined as "negligence consisting in the omission of something which a party might do and might reasonably be expected to do towards the vindication or enforcement of his rights. The word is generally the synonym of remissness, dilatoriness, unreasonable or unexcused delay—the

opposite of vigilance, and means a want of activity and diligence in making a claim (particularly in equity) which will afford ground for presuming against it and for refusing relief where that is discretionary with the court." (Black's Law Dictionary.)

Mere delay of itself is not laches, but to constitute laches the delay must have worked injury to another. (*Wills* v. *Nehalem Coal Co.,* 52 Or. 70, 96 Pac. 528; *Stephens* v. *Dubois,* 31 R. I. 138, 140 Am. St. Rep. 741, 76 Atl. 656; *Stuart* v. *Holland,* (C. C.), 179 Fed. 969; *Wilder's Exr.* v. *Wilder,* 82 Vt. 123, 72 Atl. 203; 2 Words and Phrases, Second Series, pp. 1329, 1330.)

In Pomeroy's Equity Jurisprudence, fourth edition, section 1442, it is said: "The true doctrine concerning laches has never been more concisely and accurately stated than in the following language of an able living judge: 'Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.' "

Since Hall married only two days after the decree of divorce was entered, it is manifest that the utmost diligence upon Mrs. Hall's part could not have saved the parties from the predicament in which they find themselves. No possible prejudice to Hall resulted from the delay, and he cannot complain.

An appeal was made to the lower court, and is made to this [10] court that out of consideration for the woman to whom Hall was married on October 7, the decree should not be set aside. In 9 R. C. L. 452, it is said: "In applications to set aside divorce decrees it is frequently urged by the party in

whose favor the decree was rendered that relief should be denied because of the fact that he or she has remarried but such arguments are almost invariably held not to present any insuperable obstacle to the vacation of the decree if the petitioner has not been guilty of laches, even though children have been born of the second marriage. It has well been said that it is proper and right in the administration of the law to protect innocent third parties, who may marry a divorced man or woman, but that it is quite as proper and important to protect the husband and wife and innocent children from fraudulent divorces. *A fortiori*, the hasty remarriage of the plaintiff after the procurement of a voidable judgment or decree within the time allowed by law for proceedings to vacate or set aside the same does not impose any obstacle to the granting of such relief. This view has been commended as a wise and conservative civic regulation tending to restrain divorced parties from entering into new matrimonial alliances with too much precipitation and at a time when the decree which severed a former marital connection is still open to assault and reversal in the courts of the state where the judgment is entered."

In *Simpkins* v. *Simpkins*, 14 Mont. 386, 43 Am. St. Rep. 641, 36 Pac. 759, this court said: "It is urged that the merits of the motion are affected by the fact that plaintiff has remarried since the rendering of the divorce judgment. Yes, plaintiff has remarried, according to the record, and he did this before the ink was dry upon the judgment divorcing him by default from the woman who had been his wife for twenty-five years, who had borne his children and reared them to near their majority, and who had kept the home and hearth for him and his children during all these years." After reciting the facts which led to the decree, the court concluded: "Now, under all these circumstances, for plaintiff to claim that his remarriage, in this hot and indecent haste, is pertinent upon this motion is a sorry sort of a reply to the motion of defendant setting up the pitiable facts disclosed by this record. Nor

is the situation of the person whom plaintiff purported to marry on August 15 a consideration that can set aside the rights of this defendant."

The fact that Hall remarried was a matter properly addressed to the trial court for consideration in determining the relative rights of the parties, but, giving to that fact its utmost effect, we are unwilling to say that the court's discretion was abused.

Finally, it is suggested that Mrs. Hall's application was not made in good faith; but we do not discover any evidence to sustain the suggestion. In his brief counsel for Hall propounds the inquiry: "Will the court restore the former marital tie in the face of respondent's explicit announcement through counsel at the conclusion of the trial that reunion with Jim Hall is unthinkable?" Counsel does not refer us to the record, and a diligent search of it fails to disclose that any such statement was made.

After devoting 100 printed pages to a review of decided cases involving divorce decrees attacked for fraud or collusion, the author of the notes in L. R. A. 1917B, at page 512, says: "Any attempt to formulate a conclusion which should be a safe foundation for forecasting the outcome of a given attack upon a divorce is foredoomed to failure. * * * Every suit in equity to annul a decree of divorce must necessarily be determined by its own peculiar facts and circumstances. (*Maher* v. *Title Guarantee & T. Co.* (1900), 95 Ill. App. 365.) In addition to the difficulties made apparent by these citations, there is to be considered the powerful element of judicial discretion to grant relief—an element of influence varying in strength virtually with every judge, according to his predilection to make as far as possible a marriage indissoluble, or a dissolution of it irreversible. When account is further taken of the supposed public policy of the state where the divorce is attacked, and its legislation upon the subject, expressed in the statutes or construed by the courts, the search for a reliable

[70 Mont. 460.]

guide even in a single jurisdiction becomes hopeless. The setting aside of a divorce always involves questions of fact determined, as the proceeding or suit is equitable, by the court itself, and none can say what evidence of the basic facts will be regarded as sufficiently clear and satisfactory to convince the trial judge of the justice and propriety of granting the relief sought. * * * In the past many successful raiders upon domestic peace have been judicially pronounced innocent third persons with equities superior to those of cruelly injured spouses, and by judicial adjudication have secured the fruits of the raids. It is too much to expect that such wrongs will not be repeated, yet there may be discerned a growing tendency in the courts not to repeat them, and it may be said with some confidence that efforts to get relief from iniquitous decrees of divorce which would certainly have failed in times gone by are in future likely to succeed.''

We are satisfied that the trial court did not commit any errors which affected the substantial rights of the defendant, and accordingly the order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.