400 P.2d 593

**Eva L. BATES, Appellant,**

**v.**

**Wells BATES, Appellee.***

**I CA–CIV 14.**

Court of Appeals of Arizona.

April 8, 1965.

Rehearing Denied May 18, 1965.

Review Denied June 8, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7466. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Langmade & Langmade, William J. Knudsen, Phoenix, for appellant.

Kramer, Roche, Burch & Streich, by Dan Cracchiolo, Charles L. Hardy, Phoenix, for appellee.

DONOFRIO, Judge.

Appellant, Eva L. Bates, as plaintiff in the court below brought this action against Appellee, Wells Bates, her former husband, to recover her share of the value of realty which she claimed was purchased with community funds, and concealed by him in a third party's name at the time of their divorce. Appellee, who was the defendant below, moved to dismiss the complaint. The motion was granted and a judgment entered in favor of the defendant. This appeal follows.

Since for the purpose of this appeal plaintiff's complaint must be accepted as true it is well to give a summary of its contents:

Plaintiff alleges that she and defendant were divorced in 1950, that in said divorce proceedings she had stated that there was community property belonging to the par-

ties but that she did not know and was not informed at the time of what it consisted, and that unknown to her and for a long time prior to the divorce the defendant had invested community funds in acquiring a secret interest in real property known as the "Dendora Ranch". That she knew nothing of this until within thirty days of filing the instant case. She further alleges that defendant concealed from her the interest in the ranch by carrying it in the name of another person. She alleges that by reason of all this she is entitled to her interest as a tenant in common to the proceeds of the ranch which was sold for $184,456.33. She prays for an accounting and that a trust be decreed upon the property and for such other relief as may seem meet and proper.

Gathered from the abstract of record we note these further facts: Eva L. Bates and Wells Bates were married in California in 1924. They had two children, one of which was a minor in 1950. Plaintiff filed an action for divorce in the Superior Court of Maricopa County against defendant. A property settlement agreement was purportedly signed by plaintiff on July 25, 1950. The jurat of the Notary Public to plaintiff's signature, shows that she signed the agreement in the State of California, County of Riverside, although the Notary appears to be an Arizona resident. The jurat to defendant's signature shows the defendant signed in the State of Arizona, County of Maricopa. The agreement gave plaintiff custody of the minor child and Fifty dollars per month support for said child, and Fifty dollars per month alimony. Defendant was given the community property. On August 4, 1950, plaintiff appeared before the Superior Court and obtained a decree of divorce which followed the terms of the agreement. The provision awarding the property read "all community properties now owned by the parties shall be and the same are hereby granted to the defendant as and for his sole and separate property." There is no mention in either the property settlement agreement or the decree of divorce that there is any real estate owned by the parties, nor is there a description of any property either real or personal.

In the copy of the decree set out in the supplemental abstract of record the recital therein is to the effect that the default of the defendant was not entered. Inasmuch as the parties have assumed that the judgment was obtained by default and that the error may be typographical, we attach no significance to the recital. We deem it significant, however, that there is nothing in the decree as to what type of service was made of the amended complaint which appears to be the basis of the decree, nor is there any mention as to whether defendant ever appeared in the cause.

These are discrepancies we note appearing on the face of the record which go directly to the court's ruling and we cannot avoid mentioning them. Whether or not a judgment is valid affects plaintiff's cause of action. Likewise, how a judgment was obtained, if it gives plaintiff facts upon which to directly attack any part of the judgment for fraud, also affects her cause of action. However, since no issue is made of these points and counsel in the briefs have assumed the validity of the decree we shall go no further into the matter at this time, but shall proceed with the assignments of error presented.

The lower court granted defendant's motion to dismiss the complaint upon the specific grounds that if the plaintiff had a cause of action sufficient to warrant recovery that it would constitute a collateral attack on the original judgment.

Plaintiff's assignment directed to the court's ruling is that the court erred in granting the motion because it was based on the finding that the property was awarded to defendant by a prior decree and such finding is inconsistent with the admitted facts which were that defendant concealed the property and that the property was not a subject of the decree; and that the court erred in dismissing the complaint on the grounds of collateral attack of the former decree because the complaint stated

a cause of action based on procurement of such decree by extrinsic fraud.

Appellant's brief contains seventy five pages and while it sets up many different matters, we believe the answers to the questions formed by the above sufficient to determine this appeal.

Defendant's admissions, by virtue of his Motion to Dismiss, include the following facts that are alleged by plaintiff: That defendant secretly purchased, during his marriage to plaintiff, real estate, which property he purchased with community funds, and caused title thereof to be put in the name of another person for the purpose of concealing his ownership from plaintiff; that plaintiff did not know of the property at the time of the divorce and did not discover the facts of its purchase and concealment until within 30 days of the filing of her complaint herein; that defendant's sale of the real property at issue was for the sum of $184,456.33, and that the property was the community property of plaintiff and defendant; and, that the property was not known to the court, nor adjudicated by the court at the time of the divorce decree and therefore held as tenants in common.

■ If the complaint sets forth facts showing plaintiff is entitled to relief under any theory susceptible of proof, the court should not have granted the motion to dismiss. The test to be applied on resolving the question is whether in the light most favorable to plaintiff, with every intendment regarded in her favor, the complaint was sufficient to constitute valid claim. Fineg v. Pickrell, 81 Ariz. 313, 305 P.2d 455 (1956).

Having established the facts by which we must be guided we next must turn to the principles of law involved.

■ If as contended by plaintiff, the decree was procured by extrinsic fraud, then equity will act to prevent a failure of justice, for fraud is the arch enemy of equity. 30A Am.Jur. §§ 783, 784, pp. 722, 725; 15 R.C.L. § 214 p. 760. Likewise, the concealment of material facts may form the basis of an action in equity for extrinsic fraud. 30A Am.Jur. § 804, p. 736.

■ If the decree was procured by extrinsic fraud, then equity will do justice by declaring that the defendant holds the property in trust for the rightful owner by way of a constructive trust. Honk v. Karlsson, 80 Ariz. 30, 292 P.2d 455 (1956). In MacRae v. MacRae, 37 Ariz. 307, 294 P. 280 (1930), our court laid down a definition of constructive trust at page 312 of the Arizona Reports, 294 P. at page 282 as follows:

"A constructive trust is one which does not arise by agreement or from the intention of the parties, but by operation of law, and fraud, actual or constructive, is an essential element thereto. Actual fraud is not always necessary, but such a trust will arise whenever the circumstances under which the property was acquired make it inequitable that it should be retained by the one who holds the legal title. These trusts are also known as trusts *ex maleficio* or trusts *ex delicto*. Their forms and varieties are practically without limit, as they are raised by courts of equity whenever it becomes necessary under the particular circumstances of the case to prevent a failure of justice, but the element of fraud, either actual or implied, must always be present."

■ Extrinsic fraud may also consist of deception practiced by the successful party in purposely keeping his opponent in ignorance. Honk v. Karlsson (supra).

■ We are in accord with the above authorities which create a constructive trust. The claim for relief may be brought by an independent action asking for equitable relief as has been done in the instant case. This would allow a court to administer justice without attacking the finality of the divorce decree itself. However, certain facts may appear which would make

an attack of the decree in the divorce action itself a better course to follow.

If the decree were void, the plaintiff would be free to establish her ownership and interest in the property. If validly rendered she could seek to impeach it for extrinsic fraud concerning the realty involved, and, if successful, establish her share in the purchase price under the theory of a constructive trust and/or under the theory of undistributed community property under § 25–318 (D), A.R.S., which reads:

"The community property for which no provision is made in the judgment shall be from the date of judgment held by the parties as tenants in common, each possessed of an undivided one-half interest therein."

For possible guidance a discussion of "extrinsic fraud" also referred to as "collateral fraud" is appropriate at this time.

"Extrinsic or collateral fraud", justifying equitable relief against a judgment or decree, means some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Dockery v. Central Arizona Light & Power Co., 45 Ariz. 434, 45 P.2d 656 (1935); Thompson v. Thompson, 38 Cal.App.2d 377, 101 P.2d 160; Godfrey v. Godfrey, 30 Cal.App.2d 370, 86 P.2d 357; Zaremba v. Woods, 17 Cal.App.2d 309, 61 P.2d 976.

These authorities, which we believe sound, and approve, hold the rule to be that a judgment must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. Plaintiff's case must come within the exception.

In the Dockery v. Central Arizona Light & Power Co. (supra) at page 450 of the Arizona Reports, 45 P.2d at page 662, our court in discussing the rule and defining the terms said:

"* * * Let us consider, then, the nature of the fraud which must be shown in order to give jurisdiction to a court of equity to set aside a judgment or to suspend its execution. The general rule is well stated in 15 R.C.L. 762, as follows:

"'215. Necessity that Fraud be Extrinsic or Collateral.—Not every fraud is sufficient to move a court of equity to grant relief from a judgment, but in order to set aside a judgment alleged to have been obtained by fraud, it must appear that fraud was practiced in the very act of obtaining it. The acts for which a court of equity may, on account of fraud, set aside or annul a judgment at law between the same parties have relation only to fraud which is extrinsic or collateral to the matter tried by the first court, and not to fraud in the matter on which the judgment was rendered. Relief is granted for extrinsic fraud on the theory that by fraud or deception practiced on the unsuccessful party, he has been prevented from fully exhibiting and trying his case, by reason of which there never has been a real contest before the court of the subject matter of the suit. The reason of the rule refusing relief in other cases of fraud seems to be based upon the idea that there must be an end to litigation, and therefore an issue which has been tried and passed upon by the first court should not be retried in an action to enjoin the judgment; otherwise, litigation would be interminable. Extrinsic or collateral fraud is defined to be actual fraud, such that there is on the part of the person chargeable with it the *malus animus*, the *mala mens* putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him. In simpler terms it has been said that a fraud is extrinsic

or collateral, within the meaning of the rule, when it is one of the effect of which prevents a party from having a trial, or from presenting all of his case to the court, or which operates, not upon matters pertaining to the judgment itself, but to the manner in which it is procured. * * *' "

With these principles as guides we proceed to determine the issue raised by the ruling on the motion to dismiss.

At the outset we must say that from the abstract of record and wording of the decree we can assume that there might not have been service of the amended complaint upon which the decree was based. The record is also silent as to whether there was an appearance by the defendant. We are mindful that divorce cases which pend for some time and have orders to show cause are fraught with this question. Since we do not take judicial notice of the records in the Clerk of the Superior Court's office, these appear to be important facts which are unresolved. For a valid judgment a court must have (a) jurisdiction of the subject matter, (b) jurisdiction of the *persons,* and (c) jurisdiction to render the particular judgment rendered. Tube City Mining Co. v. Otterson, 16 Ariz. 305, 146 P. 203, L.R.A.1916E, 303 (1914); Schuster v. Schuster, 51 Ariz. 1, 73 P.2d 1345 (1937). In some instances in order to secure relief in equity for fraud, especially when based on concealment, the plaintiff must have been kept in ignorance by some act of the person committing the fraud and therefore how defendant participated in the divorce action would become material.

The facts alleged by plaintiff have been sufficiently stated. Inasmuch as many theories may evolve from a set of facts it would be improper for this court to speculate as to what might have happened in this case. We can say, however, that the allegations of the complaint state fraud in its strongest sense.

"Fraud, in the sense of a court of equity, properly includes all acts, omissions, and *concealments* which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." 1 Story Eq. Jur. § 187. (Emphasis added).

If issue is joined the complaint is susceptible of proof that could well show extrinsic fraud. If the decree was procured by extrinsic fraud, then equity will do justice by declaring that defendant holds the property in trust for plaintiff.

As demonstrated by the briefs citing around one hundred cases, the field of law involved in the questions presented herein is most difficult of application. Not having the benefit of the evidence we cannot charter any course the plaintiff should take nor can we decide the merits of her cause in equity. This we must leave to counsel who represent plaintiff and to the court trying the case. As once stated by Lord Hardwick, in 1859:

"Fraud is infinite, and were courts of equity once to lay down rules how far they would go and no further, in extending their relief against it, or to define strictly the species or evidence of it, the jurisdiction would be cramped and perpetually eluded by new schemes which the fertility of man's invention would contrive." Headnote Throckmorton (supra).

We hold that the complaint states a cause of action; that the former decree is not conclusive to a direct attack for extrinsic fraud, and, if the fraud is extrinsic or collateral as herein defined that the attack is a direct not a collateral attack; and that plaintiff is not estopped to bring this action and that it is not barred by the doctrine of res judicata.

The judgment is reversed and the cause remanded with instructions to deny defendant's motion to dismiss and to permit plaintiff to amend her complaint, if desired, and to take such further proceedings as the law requires consistent with this opinion.

Reversed and remanded.

CAMERON, V. C. J., and MELVYN T. SHELLEY, Superior Court Judge, concur.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge MELVYN T. SHELLEY was called to sit in his stead and participate in the determination of this decision.