No. 14374

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

EVALEE PILATI,

                       Petitioner and Appellant,

-vs-

PAUL A. PILATI,

                       Respondent and Respondent.

---

Appeal from:  District Court of the Thirteenth Judicial District,
                Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Terry Seifert and Gary Wilcox, Billings, Montana

    For Respondent:

        Berger, Anderson, Sinclair and Murphy, Billings, Montana

---

Submitted on briefs: February 9, 1979

Decided: APR - 5 1979

Filed: APR - 5 1979

Thomas J. Kearney
                           Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Petitioner appeals from a determination of the Thirteenth Judicial District, the Honorable Robert H. Wilson granting, on January 19, 1978, respondent's motion to quash appellant's petition praying for: (1) an order directed to the respondent, commanding him to appear before the court to show cause, if any, why the property settlement agreement and the parties' decree of dissolution, into which the former was incorporated, should not be set aside; (2) a restraining order against the respondent, precluding him from selling any property acquired by him or by the parties jointly during the course of their marriage; (3) a restraining order against the respondent precluding him from interfering with or bothering the petitioner and her children; and (4) attorney's fees in the event the property settlement is set aside. The petition was accompanied by an affidavit signed by the petitioner-appellant, in which she alleges matters which, if found to be true, would form the foundation for setting aside or amending the property settlement agreement.

Some of the salient facts follow. The parties were married for over 13 years before divorcing on December 9, 1976. They had two children, who at the time of the divorce were ages nine and six. When married, petitioner was 16 years old, the respondent 35 years old. She had a ninth grade education and was not employed then or at any time during the course of the marriage. In contrast, respondent is well educated; he holds both a bachelor's and master's degree and has worked toward a Ph.D. and, according to the briefs, a J.D. He is both a rancher and high school teacher

-2-

and does real estate appraisals. During the course of the marriage, he handled all the finances of the family--even to the extent of purchasing the groceries and clothing. Petitioner apparently knew nothing of their financial status, allegedly having been deliberately kept in the dark by respondent.

Early in November 1976 petitioner retained an attorney to file for dissolution of marriage. He so filed on November 18, 1976, in the Thirteenth Judicial District, Carbon County. Subsequently, that petition was dismissed and in its place one was jointly filed by the parties, through respondent's counsel, on December 9, 1976. Petitioner alleges in her affidavit that she was misled by respondent and his attorney and induced to file that latter petition. On the very day the joint petition was filed, the dissolution was granted; the decree was signed and entered and a property settlement, prepared by respondent's attorney alone and executed by the parties some ten days earlier on November 30, 1976, was incorporated therein. Petitioner eventually received as her share of the parties' property a one bedroom house, one acre of the 46 which was the "ranch" on which they had lived, and a 1976 Toyota automobile. She was awarded custody of the two minor children, and was to receive $250 per month for their support and $50 per month for her maintenance. Within six months of the dissolution, petitioner, unable to support herself and her children, was forced to accept public assistance in the form of food stamps.

At the time of the divorce, petitioner did not know the extent of the parties' holdings or their true worth. She later learned that the 45 acres which respondent received

was worth about $70,000 and that the remainder of the property owned by the parties was worth over a half million dollars. Once she discovered the existence and worth of the property, she contacted an attorney who, on June 24, 1977, filed a petition on her behalf. The District Court, in response, issued an order, filed June 30, 1977, setting a hearing to show cause. Subsequently, on July 21, 1977, the date set for hearing, respondent filed a motion to quash. During a September 1, 1977, hearing, counsel presented oral arguments, but the parties offered no testimony of which there is record. On January 19, 1978, after briefs had been filed, Judge Wilson granted respondent's motion to quash, from which appeal has been timely taken. The case was deemed submitted on briefs, so there has been no oral argument.

Appellant-petitioner advances three issues for our consideration:

1. Is petitioner entitled to a hearing to determine whether or not the property settlement should be set aside?

2. Did the court err in granting respondent's motion to quash and thereby effectively dismiss the petition to set aside the divorce decree?

3. If a joint petition is filed, must the District Court wait 20 days before signing a final decree?

We shall consider the first two issues together, inasmuch as the response to one will be the response to the other. Because we find petitioner is entitled to a hearing, the District Court having erred in granting respondent's motion to quash, we need not reach the final issue.

The reasons articulated in respondent's motion to quash, on which the lower court granted the motion, are:

"1. That the said order in part modifies a decree of divorce dated December 9, 1976.

"2. That the time for appeal has elapsed pursuant to Rule 5, Montana Rules of Appellate Procedure.

"3. That the time for modification or amendment of the judgment of December 9, 1976, has elapsed pursuant to Rule 60(b), M.R.Civ.P."

In brief response, we note first that the petition is not an appeal from the granting of the decree of dissolution; hence, the time limitations of Rule 5, M.R.App.Civ.P., are inapplicable. The time limitation upon an independent action seeking relief from a judgment tainted by fraud "normally is laches." 7 Moore's Federal Practice ¶60.33 (2nd ed.). Respondent did not plead laches, and quite rightly so, for petitioner most assuredly did not sleep on her rights so as to be barred from relief in a court of equity.

Secondly, we point out that even if time has run out under Rule 60(b)(3), M.R.Civ.P.--and we do not decide that question--petitioner has alleged matters sufficient to invoke the equitable powers of this Court. Still unchanged is the long standing principle that the authority of a court of equity to vacate a decree obtained by fraud is inherent. E.g., Hall v. Hall (1924), 70 Mont. 460, 467, 226 P. 469, 471.

Montana's Uniform Marriage and Divorce Act, section 48-330(1)(b)(ii), R.C.M. 1947, now section 40-4-208(1)(b)(ii) MCA, states that "[t]he provisions as to property disposition may not be revoked or modified by a court, except . . . if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." Fraud upon the court and upon one of the parties to the property settlement agreement is certainly within the scope

-5-

of this provision. The wife has alleged facts ample to justify a reopening such as to redistribute the property in an equitable manner.

> "[A] court of general jurisdiction has the right, entirely independent of statute, to grant relief against a judgment obtained by extrinsic fraud, and may grant that relief either on motion in the original cause or upon a separate equity suit, and after the period prescribed by the statute [providing a six month limitation] relied on by [the husband]." Cure v. Southwick (1960), 137 Mont. 1, 8, 349 P.2d 575, 579. (Citations omitted.)

In the motion to quash, respondent makes absolutely no mention of the substance of the affiant's allegations which, if accurate, clearly show fraud on the part of the husband in failing to make a full and accurate disclosure of all the assets of the parties, whether held solely, jointly or through a business entity. In Bates v. Bates (1965), 1 Ariz.App. 165, 400 P.2d 593, the court deemed that, by virtue of the husband's motion to dismiss made in response to the wife's complaint stating a cause of action based on fraudulent procurement of a divorce decree and the attendant property settlement, he had admitted facts alleged by the wife. The court's language was "[d]efendant's admissions, by virtue of his Motion to Dismiss, include the following facts that are alleged by plaintiff. . ." 400 P.2d at 596. (Emphasis added.) Among the facts deemed admitted were the following which bear a striking similarity to certain of those in this case: the husband, during the course of the marriage, secretly purchased certain real estate, the ownership of which was concealed from the wife; the wife did not know of the existence of certain of the property at the time of the divorce and did not discover the facts of its ownership and concealment until within thirty days of the filing

of her complaint; the property was not known to the court and not made the subject of adjudication by the court at the time of the dissolution.

In this case, the wife did not know of certain of the parties' assets, specifically certain real property of considerable worth, until after the dissolution. It appears that she became aware of the considerable value of some of that property when the ex-husband attempted to sell some of it. Almost immediately, she contacted an attorney who, within a very few days, filed the complaint subject of this action. The District Court, not fully apprised, does not appear to have adjudicated, in its entirety, the division of the property. Being uninformed of all of the facts of the matter, the District Court was unable to "finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired. . ." Section 48-321(1), R.C.M. 1947, now section 40-4-202(1) MCA.

Like the Arizona court, we are sore tempted to deem admitted, by virtue of the husband's motion to quash, the statements in the wife's affidavit; however, as the petitioner has requested only that we provide her with a hearing on the matter, we are constrained to provide that relief.

In Hall v. Hall, 70 Mont. at 467, 226 P. at 471, we noted that the fraud from which relief will be granted is that which is "extrinsic or collateral to the matters tried by the court, and not to fraud in the matters on which the decree was rendered." Although the Hall court declared that neither the falsity of allegations in the complaint nor the falsity of testimony given at trial constituted extrinsic fraud such as to afford relief, it affirmed the District Court which granted relief to the wife on whom fraud had

-7-

been practiced to procure a divorce. As justification for a decision which appears to be, but which was not acknowledged as being, in contravention of its own articulation of the rule that relief will not be granted for intrinsic fraud, the court stated: "A decree of a court of conscience ought not to afford a sanctuary for fraud." 70 Mont. at 473, 226 P. at 473. In Bullard v. Zimmerman (1930), 88 Mont. 271, 277-78, 292 P. 730, 732, often cited for the following, the Court declared:

> "The power of a court of equity to grant relief from a judgment obtained by fraud is inherent; it does not depend upon statute. [Citation omitted.] But . . . 'not every fraud committed in the course of a judicial determination will furnish ground for such relief. The acts for which a judgment or decree may be set aside or annulled have reference only to fraud which is extrinsic or collateral to the matter tried by the court, and not to fraud in the matter on which the judgment was rendered. * * * What, then, is meant by the expression "fraud which is extrinsic or collateral to the matter tried by the court?" It is extrinsic or collateral within the meaning of the rule, when the effect of it is to prevent the unsuccessful party from having a trial or from presenting his case fully.' The record discloses ample evidence to bring this case within the rule announced.
>
> "'Fraud being the arch enemy of equity, a judgment obtained through fraud practiced in the very act of getting it will be set aside by a court of equity upon seasonable application. Indeed, the power of a court of equity to grant such relief is inherent. [Citation omitted.] The conscience of the chancellor moves quickly to right the wrong when it is shown that through imposition practiced upon the court by a litigant an unfair advantage has been gained by him and thus it has been made an instrument of injustice. [Citation omitted.] * * * In the language of Lord Chief Baron Pollock in Rogers v. Hadley: "Fraud cuts down everything. The law sets itself against fraud to the extent of breaking through almost every rule, sacrificing every maxim, getting rid of every ground of opposition. The law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice, right and truth." . . .' [Citations omitted.]" (Emphasis added.)

The Montana court is not alone in stating that the fraud from which a party will be relieved must be extrinsic or collateral. E.g., Bates v. Bates, 400 P.2d at 597-98.

The Supreme Court of Utah in Clissold v. Clissold (1974), 30 Utah 2d 430, 519 P.2d 241, 242, said:

> "A material misrepresentation or concealment of assets or financial condition as a result of which alimony or property awarded is less or more than otherwise would have been provided for is a proper ground for which the court may grant relief to the party who was offended by such misrepresentation or concealment, absent other equities such as laches or negligence. [Citations omitted and emphasis added.] However, before relief can be granted, it must be determined that the alleged misrepresentation or concealment constitutes conduct, such as fraud, as would basically afford the complaining party relief from the judgment. The proper disposition of this case requires an analysis and discussion of the concepts of 'intrinsic' and 'extrinsic' fraud. The public interest requires that there be an end to litigation. To accomplish this objective the courts have always distinguished between the actions of a party litigant which bear upon the opposing party's opportunity for a fair submission of his case and a party's misrepresentation during trial. Those actions asserted to be fraudulent which prevent a fair submission of the controversy such as deceiving a party into not filing an answer or deceiving a party into staying away from court on the day of the trial are classed as extrinsic fraud, and if existent in fact, entitle the opposing party to relief from the judgment. Conduct asserted to be fraudulent which occurs during the course of the proceedings, such as false testimony, whether or not existent in fact, does not entitle a party to relief from the judgment. The principle, of course, is that during a trial veracity itself is on trial, and in the public interest cannot be tried again. Some exceptions to this rule exist in divorce cases where there has been a gross misrepresentation of assets by a party. [Emphasis in original.]"

Because the court found that the misrepresentation was not gross, for "[a]t most there was a dispute as to the value of some highly speculative property, and an answer to an interrogatory which might be interpreted as concealment," 519 P.2d at 242, the trial court's denial of a motion for a new trial was affirmed. In the instant case, however, the

-9-

misrepresentation is gross and the petitioner will not be denied relief.

Fraud upon the court is a species of extrinsic fraud which will afford equitable relief.

"[F]raud upon the court . . . authorizes setting aside a prior judgment. Such fraud may consist of affirmatively misrepresenting facts to the court or of concealment of material facts by a person who is under a legal duty to make a full disclosure to the court. [Citation omitted.]

"The power of the court to set aside a judgment on the basis of fraud upon the court is inherent and independent of statute, and the timeliness of proceedings to set aside a prior judgment so obtained is not subject to the six months time limitation in Rule 60(b), M.R.Civ.P., but must ultimately depend upon equitable principles and the sound discretion of the court. [Citation omitted.]" In re Julia Ann Bad Yellow Hair (1973), 162 Mont. 107, 111, 509 P.2d 9, 12. (Emphasis added.)

Although we determined that fraud was not committed on the court in that case, we find that here the husband committed fraud upon the court in failing to disclose fully the extent and nature of property subject of division in the proceeding for dissolution of marriage.

"In a number of cases in which the divorce judgment was based upon a settlement agreement to which the wife's consent had been obtained through the husband's concealment of property and misrepresentation of financial status, the judgment has been held not conclusive on the ground that, by reason of the agreement, actual judicial consideration or determination of the property rights of the parties had been effectively prevented or withdrawn." Annot., 152 A.L.R. 190, 213 (1944).

Selway v. Burns (1967), 150 Mont. 1, 8-9, 429 P.2d 640, 644, recites these basic principles:

"[R]elief may be granted either on motion in the original action or in a separate equity suit. Rule 60(b) expressly preserved this inherent power in its last sentence which provides: 'This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not personally notified as may be provided by law, or to set aside a judgment for fraud upon the court.'

-10-

"Our federal courts also recognize and use the
historic equity power to set aside judgments
gained by fraud. Hazel-Atlas Class Co. v. Hart-
ford Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250.
The only limitation that has been placed upon the
exercise of this power is that the investigating
court must observe the usual safeguards of the ad-
versary process by granting notice to affected
persons and by conducting a fair hearing on the
existence of the fraud. Universal Oil Co. v. Root
Refining Co., 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed.
1447.

"The fraud that will move a court of equity to
exercise its inherent power to vacate judgments
has been described as that which prevents the unsuc-
cessful party from having a trial or presenting its
case fully. [Citations omitted.] It is always the
kind of fraud that goes to the very integrity of
the judicial system because the court is misled and
made one of the victims of the fraud. [Citation
omitted.] Cases decided by this court show that
the prohibited result may be achieved either by af-
firmatively misrepresenting facts [citation omitted]
or by concealment of facts by a person who was under
a legal duty to make a full disclosure to the court.
[Citations omitted.]" (Emphasis added.)

A court is entitled to presume that the substantive

content of documents, presented for its consideration in

determining the legal and equitable questions of a case, are

truthful and accurate, "and a misrepresentation of assets

and income is a serious and intolerable dereliction on the

part of the affiant which goes to the very heart of the

judicial proceeding." Casanova v. Casanova (1974), 166

Conn. 304, 348 A.2d 668, 668. Based on that dereliction,

the Connecticut court determined that the wife was entitled

to "a new and full hearing . . . untainted by the [husband's]

misrepresentation." 348 A.2d at 668-69. In that case,

certain deposition proceedings, subsequent to a hearing on

the wife's motion for an order for temporary alimony and

support for the parties' minor children of whom she had

custody, revealed that the husband had materially misrepre-

sented his financial status. In the instant case, the

misrepresentation is perhaps more subtle, but no less

material and intolerable. In this case, the property settlement agreement makes no mention whatsoever of the total assets of the parties; neither does it recite what property the husband was to get. The only mention of any property is the following:

> "That the husband shall furnish the wife and children [the custody of whom had been awarded to the wife] with adequate and comfortable living quarters by either: a. Buying a house in Red Lodge, Montana, b. Buying a mobile home and making arrangements to set same on acreage near Red Lodge, Montana, or c. By moving the wife and children into a home presently owned by husband on property owned by husband on property North of Red Lodge, Montana. In any event, once the decision as to living quarters is made, husband agrees to cause title to same to be transferred to wife within a reasonable time. 5. That husband shall furnish wife with an adequate vehicle for the transportation needs of herself and the children."

Thus, in terms of a "property settlement," the wife was to get a house and a car, and the husband was to get everything else, which it appears was worth over half a million dollars at the time of the dissolution of the marriage. The house and the one acre on which it is located and the 1976 Toyota have not been shown to be worth over half a million dollars, such that we could say the property division was equitable.

It is indeed the rule that a judgment must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that a party, by some extrinsic or collateral fraud, has prevented a fair submission of the matter. E.g., Bates v. Bates, 400 P.2d at 597. But, as in Bates, the wife's case here comes within the exception, for extrinsic fraud may also consist of deception practiced by a party—here, the husband—in purposely keeping another party—here, the wife—in ignorance.

-12-

400 P.2d at 596. This sort of deception, justifying equitable relief, fits within the scope of that denominated "extrinsic or collateral fraud", defined as "some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy. [Citations omitted.]" 400 P.2d at 597. Although one might quibble that in a proceeding for dissolution of marriage under Montana's Uniform Marriage and Divorce Act, there is no "prevailing party" or "unsuccessful party," the spirit of the principle of equity will not be so easily downtrodden. There has not been a fair submission of the controversy here. Furthermore, "'[f]raud in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' 1 Story Eq.Jur. § 187. (Emphasis added.)" Bates, 400 P.2d at 598. Surely undue advantage was taken of Evalee Pilati, to her injury, such that she is entitled to relief in a court of equity.

For the reasons articulated above, we reverse the judgment and remand the cause with instructions to reinstate it and to proceed as law and equity dictates.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
Justices

-13-