No. 01-771

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 185N

IN RE THE MARRIAGE OF:

PEGGY ELIZABETH DERZAY,

       Petitioner and Respondent,

  and

JOHN ANTONY DERZAY,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                  In and for the County of Deer Lodge,
                  The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Douglas J. DiRe, Dayton Law Firm, Anaconda, Montana

       For Respondent:

              Brad L. Belke, Butte, Montana

                     Submitted on Briefs:  June 6, 2002

                            Decided:  August 27, 2002

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     John Antony Derzay (John) appeals a determination of the District Court for the Third Judicial District, Deer Lodge County, denying his motion for a new trial in the dissolution of his marriage to Peggy Elizabeth Derzay (Peggy) particularly concerning the distribution of the parties' marital property.  We affirm.

¶3     John raises the following issues on appeal:

¶4     1.  Did the District Court abuse its discretion when it concluded that the Separation and Property Settlement Agreement and Parenting Plan entered into by the parties was not unconscionable?

¶5     2.  Did the District Court err by not setting aside the decree of dissolution of marriage pursuant to Rule 60(b)(3), M.R.Civ.P., for fraud, misrepresentation or other misconduct?

### Factual and Procedural Background

¶6     John and Peggy were married in October 1982.  They have two children, Walter, born in June 1983, and Lisa, born in August 1984.  The parties and their children resided on the Modesty Creek Ranch near Deer Lodge throughout most of the marriage.  The Modesty Creek Ranch was purchased by Peggy from her parents shortly before the parties married.  Also prior to their marriage, John received a settlement from an industrial accident in the

amount of $186,000 which he invested.

¶7    In May 1993, after experiencing marital problems, the parties entered into a Postnuptial Agreement which listed their separate and marital assets at that time and provided that, in the event of dissolution of the marriage, all of the assets would be "equitably" divided between them.  Shortly thereafter, the parties reconciled and, in January 1996, they purchased a second residence referred to as the Lost Creek property.  However, John and Peggy once again experienced marital difficulties and they eventually separated with John moving from the Modesty Creek Ranch to the Lost Creek property.

¶8    Peggy drafted a Separation and Property Settlement Agreement and Parenting Plan in October 2000.  This settlement agreement apportioned the Modesty Creek Ranch, all livestock, water rights, ranch equipment and bank accounts in Deer Lodge County with Peggy's name on them to Peggy.  The settlement agreement also apportioned the Lost Creek Property and all interest in investments and other bank accounts to John.  It also included a provision requiring John to pay child support in accordance with the Montana Child Support Guidelines.  Both parties signed the settlement agreement on October 16, 2000.  That same day, John executed a quitclaim deed conveying his interest in the Modesty Creek Ranch to Peggy.  In addition, Peggy executed a quitclaim deed conveying her interest in the Lost Creek property to John.

¶9    The following day, Peggy filed a petition for dissolution along with the parties' settlement agreement.  John was served and he acknowledged service of the summons on October 17, 2000, however, he did not file an answer to the petition.

3

¶10     On November 8, 2000, the District Court held a dissolution hearing at which time John testified that he did not contest the divorce and had freely and voluntarily signed the settlement agreement. John's only objection was that he should not have to pay child support because he claimed that in the settlement agreement, he gave a disproportionate share of the marital assets to Peggy for the care of the children. He characterized the property division and Peggy's request for child support, both of which were contained in the settlement agreement, as "almost unfair."

¶11     The District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage on January 10, 2001. In that decree, the court determined that the settlement agreement was not unconscionable. Therefore, the court incorporated the settlement agreement into the decree by reference. The court also determined that, based on the Montana Child Support Guidelines, John was required to pay child support in the amount of $412 per month.

¶12     On May 3, 2001, John filed a Motion for New Trial or, in the Alternative, Relief from Final Judgment, noting that no notice of entry of judgment had been filed by either party, therefore, the decree was not yet final. The matter was briefed by both parties, affidavits were filed and a hearing was held on July 11, 2001, at which both parties were present and represented by counsel. On September 12, 2001, the District Court entered its Opinion and Order concluding that, because more than 60 days had passed since John filed his alternative motions, those motions were deemed denied pursuant to Rule 59(d), M.R.Civ.P. John now appeals the District Court's Opinion and Order.

4

**Issue 1.**

¶13     *Did the District Court abuse its discretion when it concluded that the Separation and Property Settlement Agreement and Parenting Plan entered into by the parties was not unconscionable?*

¶14     When a district court makes a determination regarding the unconscionability of a marital and property settlement agreement, it engages in a discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. *In re Marriage of Rolf*, 2000 MT 361, ¶ 20, 303 Mont. 349, ¶ 20, 16 P.3d 345, ¶ 20 (citations omitted).  The discretionary judgments made by a district court are presumed to be correct and will not be disturbed by this Court absent an abuse of discretion by the district court. *Rolf*, ¶ 20.  A court abuses its discretion in a dissolution proceeding if it acts arbitrarily without employment of conscientious judgment or it exceeds the bounds of reason resulting in substantial injustice. *In re Marriage of Harkin*, 2000 MT 105, ¶ 24, 299 Mont. 298, ¶ 24, 999 P.2d 969, ¶ 24 (citations omitted).

¶15     In the case *sub judice*, John argues that the District Court contradicted its conclusion that the settlement agreement was not unconscionable when the court, in its September 12, 2001 Opinion and Order stated:

> The Court can state without hesitation that it has never seen a case more poorly presented during pro se proceedings.  Ambiguity and contradiction abound within this case as it has been presented to the Court.  *The Court can not identify what would be an equitable distribution of the marital estate based upon the record currently before this Court.*  [Emphasis added.]

¶16     John maintains that it is evident from this statement that the District Court did not fully adjudicate the division of the parties' property.  Therefore, John argues that the lack of

5

an evidentiary basis to conclude that the separation agreement was not unconscionable justifies reopening the separation agreement as it pertains to the property distribution. Hence, John requests that the parties' property be redistributed in accordance with their May 1993 postnuptial agreement rather than the October 2000 separation agreement.

¶17 Peggy contends, on the other hand, that the District Court's statement was nothing more than a comment on John's obvious bad faith at the hearing and the court's disgust with John's attitude and conduct. We cannot agree with either party on this matter. In quoting the District Court's Opinion and Order, John left out one last, important sentence immediately following the material he quoted. This sentence reads: "It was not until the parties each retained counsel that this case finally took on a degree of sensible proceedings." Rather than implying that the settlement agreement is unconscionable, as John argues, or that the District Court was disgusted with John's conduct at the hearing, as Peggy argues, we read the court's statement as a comment on the problems that can occur when parties attempt to represent themselves in complicated matters. In this case, those problems were resolved when the parties finally retained counsel.

¶18 Furthermore, while John argues that the District Court failed to "equitably" apportion the marital assets pursuant to § 40-4-202, MCA, he fails to recognize that that statute only applies when no separation agreement exists or when a separation agreement is found to be unconscionable. The correct statute controlling this matter is § 40-4-201(2), MCA, which provides in pertinent part:

in a proceeding for dissolution of marriage or for legal separation, *the terms of*

6

*the separation agreement*, except those providing for the support, parenting, and parental contact with children, *are binding upon the court* unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable. [Emphasis added.]

¶19 Peggy argues, and we agree, that the mere fact that the division of marital assets was unequal did not make it inequitable. We have held that an unequal division of property is only inequitable if no reason exists in the record for the unequal division. *See In re Marriage of Slayton* (1981), 195 Mont. 249, 252, 635 P.2d 1303, 1305. Here, John testified at the November 8, 2000 hearing that he voluntarily entered into the settlement agreement and that he "left all of the assets on the table down at the ranch in order for [Peggy] to create a better quality of lifestyle for [their] children." Clearly, providing for the parties' two children is sufficient enough reason for an inequitable distribution of the marital assets.

¶20 John has not presented any evidence to support his contention that the settlement agreement is unconscionable and should be set aside. Nor has he presented any evidence to show that the District Court "act[ed] arbitrarily without employment of conscientious judgment or exceed[ed] the bounds of reason resulting in substantial injustice." *Harkin*, ¶ 24.

¶21 Accordingly, we hold that the District Court did not abuse its discretion when it concluded that the Separation and Property Settlement Agreement and Parenting Plan entered into by the parties was not unconscionable.

**Issue 2.**

¶22 *Did the District Court err by not setting aside the decree of dissolution of marriage pursuant to Rule 60(b)(3), M.R.Civ.P., for fraud, misrepresentation or other misconduct?*

7

¶23    John claims that Peggy made fraudulent and misleading representations to induce him to sign the settlement agreement, hence, John contends that he is entitled to relief from the decree of dissolution under Rule 60(b)(3), M.R.Civ.P., which provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . .

¶24    John also cites to our prior decision in *Best v. Best* (1982), 202 Mont. 109, 115, 656 P.2d 201, 204-05, wherein we stated that

> a judgment must be regarded as final and conclusive unless it is shown that a party, by extrinsic or collateral fraud, has prevented a fair submission of the matter. A court of equity's power to set aside a decree obtained by such fraud is inherent. [Internal citations omitted.]

However, *Best* is not controlling here because the facts, as characterized by Peggy, are "radically different." While the parties in *Best* also entered into a property settlement agreement, the record in that case provided ample evidence that the husband had concealed assets from both his wife and the court including a substantial amount of gold and silver coins and bullion held in Swiss and London bank accounts. The court in *Best* also concluded that the husband had grossly misrepresented his intentions as to supporting and educating his

children. *Best*, 202 Mont. at 113-15, 656 P.2d at 203-04. No evidence of fraud or misrepresentation exists in the case *sub judice*.

¶25    John also claims that Peggy represented to him that they would work on a reconciliation after the settlement agreement was signed just as they did after signing the 1993 postnuptial agreement and that Peggy's rushing to file for dissolution the following day shows that Peggy misrepresented her intentions. We find this argument disingenuous at best based on the wording contained in both the settlement agreement and the postnuptial agreement. While the postnuptial agreement stated: "John and Peggy are desirous of making a good faith effort to resolve their marital problems," the settlement agreement stated: "in consequence of an irretrievable breakdown in their marriage relationship [the parties] are going to get a divorce and be separate from each other."

¶26    In addition, the postnuptial agreement stated that the parties "mutually desire that their respective separate assets shall become the joint property of each of them;" that "both parties agree to fully disclose their individual financial matters and work to combine their assets into marital assets;" and that "both of the parties hereto shall cause all of the assets now held by each of them plus all income from said assets to be held jointly by John and Peggy." In contrast, the settlement agreement, besides dividing the parties' property between them, stated that "[t]he parties shall, from this time forward, live separate and apart from each other." Peggy's intention to seek a divorce could not have been more clear.

¶27    Moreover, both parties appeared in court and testified to their desire to be divorced. In particular, John testified as follows:

9

> THE COURT:  Do you contest this divorce?
> [JOHN]:  No, sir.  No sir I don't.
> . . . .
> [JOHN]:  . . . We both want to get away from each other and for the good of the children it's the best that we do.

In addition, John testified that his signing the settlement agreement was entirely voluntary:

> THE COURT:  You've signed a Property Settlement Agreement that is before the Court, that's your signature?
> [JOHN]:  Yes sir.
> THE COURT:  Did anybody force you to sign that?
> [JOHN]:  No sir.
> THE COURT:  You did that freely and voluntarily?
> [JOHN]:  Yes sir.

¶28    The dissolution hearing in this case was held on November 8, 2000, and the District Court did not enter judgment until January 10, 2001, a period of more than two months.  If John had any objection to the entry of the decree, he had more than sufficient time to make such objection.  For that matter, John had at least two chances to contest the divorce decree and the property settlement and he failed to do so either time.  First, he could have responded to the petition for dissolution when he received it, but he did not.  And, second, at the close of the dissolution hearing, the Judge suggested to John that if he objected, he should obtain an attorney prior to the court's receipt of the child support calculations, but again John failed to act.

¶29    John also complains about being unrepresented at the time he signed the settlement agreement, but John fails to point out that Peggy was also unrepresented by counsel and working without counsel was a choice he freely made.  At the hearing, John testified:

> THE COURT:  You've chosen to come here to Court without Counsel,

10

without conferring, without finding out what your -- you're very concerned about your rights and how unfair it is but you haven't brought an attorney with you to explain how this works?

[JOHN]: Sir, we're trying to do this without the help of counsel . . . .

¶30 Accordingly, we hold that the District Court correctly determined that there was insufficient evidence of fraud or misrepresentation to justify setting aside the settlement agreement.

¶31 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART